THE STATE OF NEW JERSEY, EX REL. LEWIS LANE, RELATOR AND DEFENDANT IN ERROR, v. JAMES E. OTIS, DEFENDANT AND PLAINTIFF IN ERROR.

Submitted December 9, 1902—Decided March 2, 1903.

1. The title of the relator, as well as the respondent, may be inquired into under the act entitled "An act in relation to the writ of *quo warranto*," approved February 18th, 1895.

2. The act entitled "A supplement to an act to incorporate the chosen freeholders in the respective counties of this state," approved March 24th, 1899, in so far as it requires a majority vote to elect such freeholders in all townships, except in townships in counties of the first class, is unconstitutional, because, in this respect, special.

3. The provision of our Election law which declares that "every person shall be entitled to vote in the election district in which he actually resides and not elsewhere," will not be held to disfranchise voters who vote at a polling-place selected and advertised by the proper officers as the polling-place of the district in which such voters reside, notwithstanding the place so selected, but at which the election is otherwise lawfully held, is outside the territorial limits of the election district for which it is provided; no fraud or other harm being shown or charged.

On error to the Supreme Court.   For opinion of that court, see *ante p.* 64.

For the plaintiff in error, *Isaac W. Carmichael.*

For the defendant in error, *George Reynolds* and *John G. Horner.*

The opinion of the court was delivered by

FORT, J. The relator claims to have been legally elected to the office of chosen freeholder of Ocean county, from the township of Little Egg Harbor, at an election held in March, 1901. The board of freeholders of said county refused to recognize the relator, notwithstanding he took the oath of office and tendered himself ready to enter upon its duties, but instead they recognized the incumbent as elected, at said election, to said office. This proceeding is to oust the incumbent and seat the relator.

With so much of the opinion of the Supreme Court as holds that, in a *quo warranto* proceeding between an incumbent and a claimant for the office, who is also the relator, the title of both the incumbent and relator may be inquired into, we agree. This is undoubtedly the rule since the act approved February 18th, 1895. *Pamph. L., p.* 82.

We also agree with the Supreme Court that the act entitled "A supplement to an act to incorporate the chosen freeholders in the respective counties of this state," approved March 24th, 1899, is unconstitutional, in so far as it provides that in all townships, other than townships in counties of the first class, it shall require a majority of all the votes cast to elect a chosen freeholder. This act clearly relates to the internal affairs of townships, and in this respect is special in that it does not apply to all the townships of the state required to elect chosen freeholders. *Pamph. L.* 1899, *p.* 427.

With the conclusion of the Supreme Court that the relator is entitled to the office, and that the incumbent shall be ousted, we do not agree.

The township of Little Egg Harbor is entitled to be represented in the board of chosen freeholders of Ocean county by one freeholder. In February, 1901, there was set off from Little Egg Harbor township a part of the township to create the borough of Tuckerton. *Pamph. L.* 1901, *p.* 27.

A borough which has a population of not less than three thousand inhabitants is entitled to be represented by a chosen freeholder. *Pamph. L.* 1897, *p.* 285, § 2.

Where there are less than three thousand inhabitants in a

borough, the statute provides that "the votes polled in such borough for freeholder shall be added to the votes polled in the township and be canvassed in the same manner as the votes of the several election districts in the township are directed by law to be canvassed." *Borough act, Pamph. L.* 1897, *p.* 287, § 6.

At the election at which the relator claims to have been elected the voters of the borough and the township both voted at the polling-places advertised for them, respectively, to vote at. There is no claim that the voters legally entitled to vote, because residents of the borough, voted at the polling-place advertised as the polling-place for the residents of the township outside the borough. Nor did any of the residents of the township vote in the borough polling-place. There is no question as to the legality of the voters voting in each polling-place.

The only ground of claim by the relator is that the votes cast by residents of the township outside of the borough should not be counted, because the polling-place selected by the clerk, and advertised as the place for said voters to vote, was not, in fact, located within the territory outside the borough, and within the township voting district, but was, in fact, in a building situated within the territorial boundaries of the borough of Tuckerton.

There is no allegation of fraud on the part of anyone.

Does the mere fact that a voting precinct or polling-place has been selected outside the district defeat the whole vote cast at such polling-place?

That does not raise the question of one voter lawfully entitled to vote in one district voting in the ballot-box of another district, but is the case of a voter voting at the polling-place provided for him to vote at for the district in which he resides. Every person who voted at the polling-place set up for the residents of the township of Little Egg Harbor to vote at was legally entitled to vote at the lawful polling-place provided for the residents of said election district to vote.

Sections 7, 8, 12, 64 and 69 of the General Election law are the important sections in determining the rights of the relator

and of the residents of the township whose votes it is alleged should not be counted. *Pamph. L.* 1898, *p.* 237.

Section 7 requires the clerk of every township, "at least eight days prior to * * * the day of election, to put up an advertisement, in at least five of the most public places within the township, of the time, place and purpose of the election and the offices to be filled thereat."

Section 64 requires that the board of registry and election shall, in their respective districts, hold and conduct all elections held throughout the state.

Section 69 reads: "Every person possessing the qualifications required by the constitution and being duly registered as required by this act, shall be entitled to vote in the election district in which he actually resides, and not elsewhere."

Section 12 of the Election law defines what an election district is as follows: "For the purpose of this act the term 'election district' denotes the territory within which there is a single polling-place for all the voters therein."

Section 8 of the same act devolves upon the clerk of every township, prior to the first meeting of the board of registry and election, to "procure for each election district in his township a suitable room, in which said board shall meet to make and revise the register of voters and also to hold the election."

The voter must vote, or be disfranchised, at the place selected by the clerk and advertised as the polling-place for the "election district" in which he resides. These sections of the Election law only fix the method of selecting the place and giving notice to the voter where he may lawfully vote as a resident of a particular election district. An error of the clerk in the selection of the place should not disfranchise the voter, no matter where the place is, if it is the place selected and advertised, and where the proper election officers conduct the election, and is the only place lawfully provided for the voters of that particular election district to vote at. The ballots thus cast are cast by legal voters, and cast in the place provided for that purpose by the officer charged with that duty by law. If a clerk, by selecting a place just over an election district

line, could defeat the whole vote of the district, it would be putting a premium on fraud.

The right of suffrage is too sacred to be defeated by an act for which the voter is in no way responsible, unless, by the direct mandate of a valid statute, no other construction can be given. There is nothing in our Election law which requires the rejection of votes honestly cast and counted in a case like the one before us.

Where the election inspector changed the place of election, on election day, the Supreme Court of Michigan said: "Here was an election held under the forms of law in good faith. No fraud is imputed. No person cast a vote who was not entitled. The relator has failed to show himself injured by the action of inspector of election." *Farrington* v. *Turner,* 53 *Mich.* 27, 51 *Am. Rep.* 88; *Preston* v. *Culbertson,* 58 *Cal.* 198.

In Nebraska it is held that the casting of votes by electors outside of their district, at a voting-place established for them, is a mere irregularity, not affecting the merits of the election, and the vote should be counted. *Peard* v. *State,* 34 *Neb.* 372.

In Texas, where the constitution of the state requires electors to vote in the precinct of their residence, it was held that an election advertised to be held at the court house, which was outside the precinct, was valid, notwithstanding the constitutional requirement that electors must vote in the precinct of their residence. *Ex parte White,* 33 *Tex. Crim. Rep.* 594.

To the same effect is the decision of the Court of Appeals of New York in *People* v. *Carson,* 155 *N. Y.* 491.

We think the provisions of our Election law here alleged to defeat the right of the incumbent are directory merely, and that where no fraud or other harm is shown or charged that the failure to observe their requirements should not disfranchise the voter. *Smith* v. *Howell,* 31 *Vroom* 384, 389.

The incumbent, having received a plurality of the votes cast at the polling-places in the borough of Tuckerton and the township of Little Egg Harbor, was duly elected to the office which the relator seeks.

The Supreme Court is reversed.

*For affirmance*—THE CHANCELLOR, BOGERT. 2.

*For reversal*—DIXON, FORT, HENDRICKSON, PITNEY, VREDENBURGH, VOORHEES, VROOM. 7.