[No. 21584. Department One. February 18, 1929.]

W. D. LOOP et al., *Appellants*, v. W. F. McCRACKEN *et al., Respondents*.[1]

*Thomas K. Chambers,* for appellants.

*Ben Driftmier* and *Preston, Thorgrimson & Turner,* for respondents.

HOLCOMB, J.—Appellants, owners of a tract of land within the port district of the port of Anacortes, instituted this action to restrain and enjoin the port com-

[1] Reported in 274 Pac. 793.

missioners of that port from issuing $93,000 worth of bonds, upon the grounds that the election held to authorize the issuance, in North LaConner precinct, a portion of the port district, was in all respects illegal.

The theory of appellants as to the irregularity of the election was based upon the alleged facts: That no legal notice of election was given in North LaConner precinct; that no election was held within that precinct; that no proper officers officiated at the election; and that the inhabitants of that precinct generally did not know that such an election was to be held; that, if the port commissioners are permitted to issue and sell the bonds so authorized, they will become a lien upon the properties of appellants and cloud their title.

Upon issues raised by the answer of respondents, trial was had, after which findings of fact and conclusions of law were made, upon which a decree was duly entered denying the relief demanded by appellants. A number of findings and several conclusions of law were entered, to which appellants excepted, but present no argument upon them, grounding their assignments of error generally upon the question of the legality of the election upon the findings as made.

The material findings have been carefully examined, for the purpose of ascertaining the situation existing in this case of which complaint is made by appellants.

Either by pleadings not denied, or by the findings of fact made by the court, the following summary may be made of the facts.

On November 2, 1926, at the general election, the port district of Anacortes was authorized to be organized by a vote of the people under the provisions of the law relating thereto. At the same time, commissioners for the port district were elected, and subsequently qualified. On July 26, 1927, the port commissioners adopted a resolution submitting to the voters

of the port district, for ratification or rejection, certain plans for the improvement of the port, and at the same time also adopted and submitted a resolution calling for an election to be held in the port district, to pass upon the scheme of improvement and, at the same time, to vote upon the question of authorizing or rejecting the issuance of $93,000 worth of bonds for the port district. The same resolution designated the polling places in the various precincts and wards in the port district, and set the date of election as of August 27, 1927.

In the notice of election the polling place for North LaConner was fixed as the "City Hall" in North La-Conner precinct. No such place as the "City Hall" existed in North LaConner precinct. No election was held on August 27 in North LaConner precinct. The election was, in fact, held in South LaConner precinct in the city hall there situated. North LaConner precinct is on Fidalgo island. LaConner is the place of business for the inhabitants of that precinct. They cross from the island, by a bridge over a slough, to LaConner. In 1922, and at all times since, the voters of North LaConner precinct have voted at all elections at the city hall in South LaConner precinct. Apparently, that voting place has been used for that precinct since 1914; consequently, the votes of the voters of the port district living in North LaConner precinct were cast at a polling place appointed for the election at the city hall in South LaConner precinct, which had for a long time been their usual place of voting.

The election was held in fifteen precincts, nine of them being held in the city, itself, and six outside the city limits of Anacortes. One of these six was the precinct of North LaConner. South LaConner is not within the port district. The election officers were appointed by the commissioners of the port district,

took the oath and qualified according to law and held the election for North LaConner precinct, though they were, in fact, residents and voters of South LaConner precinct. A regular notice of election, which is not in itself attacked as being defective in form or substance, was published in two papers in Anacortes and therefore within the port district; one a daily, as prescribed by law, and also a weekly published in Anacortes, which apparently had a fairly extensive circulation in North LaConner precinct.

One copy of the notice of election was posted in the city hall in South LaConner precinct, which had been designated as the polling place, and another at the most prominent place in North LaConner precinct, a short distance from the end of the bridge, crossed by all persons going to and from the main part of LaConner, at a turn in the only road, on a telephone pole where it was likely to be seen by all the voters of that precinct. In addition to the notices above mentioned, the port commission mailed literature, giving the date of the election, to every registered voter of the port district. The port election was also the subject of general news items in the weekly newspaper published at LaConner, as well as the Anacortes papers, and other steps were taken to advise the voters of the pending election.

At the general election on November 2, 1926, there was a total vote polled of 1913 votes in all the port of Anacortes precincts, which election was the last general election preceding the special election of August 27, 1927. At the special election of August 27, 967 votes were polled, which, after being duly and regularly canvassed, showed a vote of 607 for the propositions, and 360 against them. In South LaConner precinct at the city hall, where the special election was held, there were polled 11 votes of legally registered

voters, ten of which votes were against both propositions and therefore against the bonding of the port district, while one vote was in favor of them.

Under the law, fifty per cent of the votes cast at the last general election were required to be cast upon the propositions, including that upon the issuance of bonds, or fifty per cent of 1913 votes. That would be 956½ votes required to be polled on the proposition. Therefore, if the eleven votes polled in South La-Conner precinct are excluded, there would be but 956 votes polled, or one-half of a vote short of the fifty per cent required to carry the bonds. In North LaConner precinct there were thirty registered voters, and, of course, none could have been registered after the notice of election, twenty days before the election was given, because the law requires registration be closed during that time. Rem. Comp. Stat., § 5122. Hence, nineteen duly qualified voters failed to vote at the special election. When it is noted that the vote cast upon the bond issue throughout the rest of the port district was only about one-half of the vote cast at the previous general election, the number of voters voting, and not voting, in North LaConner precinct, was not especially disproportionate. It is clear, therefore, that the whole case depends upon whether the eleven votes cast in the South LaConner precinct should be counted. If they were legally cast and should be counted, the bonds carried. If they were not, the bonds failed by one-half vote.

While there are no allegations or other contentions herein that there was any intended or actual fraud, in the way of conducting the election, by either the port district commissioners or the election officers, the theory of appellants is that almost the entire law governing port elections was disregarded, and that noncompliance with such provisions as due notice of

election, place of election and proper officials to preside at the election, constitute so many failures to comply with the law relating to such elections that it renders the whole election illegal, regardless of any intended or actual fraud.

(1) Is a special election, where the district is to be bonded, legal and binding upon the district where the same is held outside of the port district and consequently outside of any voting precinct within the confines of such port district?

Upon this question appellants rely upon Laws of 1927, ch. 204, p. 297 (Rem. 1927 Sup., § 9691). That act provides in part that

"It shall be the duty of the county commissioners in the formation of a port district, and of the port commission in all subsequent elections, to, at least twenty (20) days before each election, designate the polling places and appoint three election officers for each place of voting."

"There shall be not less than one polling place in each of the various wards of any incorporated city within such port district, and one polling place within each precinct of each port district not within the limits of any incorporated city: . . ."

"All elections shall be called and held as in this section provided except as in this act otherwise expressly provided."

Another provision of the same act provides that the manner of conducting and voting at elections under the act, opening and closing of polls, keeping of poll lists, canvassing the votes, declaring the result, and certifying the returns, shall be the same as provided by the general election laws, except as otherwise provided in the act.

There is nothing in this act, nor in the general election laws which have been pointed out, providing that, unless such elections are held strictly as prescribed by the statute, such elections shall be void.

While such provisions are mandatory upon those having the authority to arrange the machinery for such special elections and should be enforced by the courts, if the remedy were invoked before the election, the situation is far different where nothing of the kind was done before the election, after the election has taken place. The voter had the right to vote and of course he must vote, if he votes at all, at the place selected by the election authorities. The error of the election authorities should not disfranchise the voter. No matter where the place is, it is the place selected and advertised, and where there are officers to conduct it, and the only place provided for the voters of that particular election district at which to vote. The ballots thus cast were cast by legal voters in the place provided therefor, by the officers properly charged with that duty by law. *Lane v. Otis,* 68 N. J. Law 656, 54 Atl. 442.

In Texas, where the constitution requires electors to vote in the precinct of their residence, it was held that an election advertised to be held at the court house, which was outside the precinct, was valid, notwithstanding the constitutional requirement that electors must vote in the precinct of their residence. *Ex parte White,* 33 Tex. Cr. 594, 28 S. W. 542.

In Texas also, where a petition and order for election, to adopt the stock or herd law within a justice precinct, excepted that part of the precinct within an incorporated town, and electors living within that portion were not permitted to vote at the election, the fact that one of the polling places selected was the courthouse, located within the excepted portion, was held not to be such an irregularity as would invalidate the election. *Ex parte Stein,* 61 Tex. Cr. 320, 135 S. W. 136. In that case another Texas case was cited which held that a mere irregularity in the place where the

election was held would not invalidate the election, when it did not appear that there had not been a fair expression of the will of the people. Another Texas case, *Ralls v. Parish,* 151 S. W. (Tex. Civ. App.) 1089, involved a contest over a county seat election. In that case the voting place in a certain town was situated on the boundary line of the county, which had long been a disputed strip also claimed by another county, and the right of the voter to vote at that place had not previously been questioned and no one outside of the precinct voted at the election or was deprived of his vote because of the location of the ballot box. It was held that the counting of the votes cast at such voting place did not violate the spirit of the constitution, although the voting place was in fact located out of the county.

In North Dakota a special election was held in a city to determine the question of whether the city would increase its debt limit and issue bonds to establish a city light plant. The election was held at one central voting place, instead of having a place for voting in each ward as an election precinct, as required by statute. The place of election was where city special elections had for years usually been held. A large vote was polled at the special election. Ample opportunity was afforded all electors to vote. No fraud was alleged in the calling of, or in the conduct of the election. It was held that, though the election, as required by statute, should have been held in each ward, the election was irregular, but not void. It was also there held that, where the election was held as called for, at the place designated by the lawful authority, and was regularly conducted, and a fair and legal canvass and return made of all votes cast, with no fraud charged, in the absence of a statute expressly invalidating the election, it should be upheld.

In a Michigan case, where the election inspector changed the place of election on election day, the supreme court of that state said:

"Here was an election held under the forms of law in good faith. No fraud is imputed. No person cast a vote who was not entitled. The relator has failed to show himself injured by the action of inspector of election." *Farrington v. Turner*, 53 Mich. 72, 18 N. W. 544.

In Nebraska it has been held that the casting of votes by electors outside of their district, at a voting place established for them, is a mere irregularity not affecting the merits of the election, and the votes should be counted. *Peard v. State ex rel. Huering*, 34 Neb. 372, 51 N. W. 828.

Although it may seem passing strange that ballots deposited outside of the precinct of the voter and before officers who were not qualified voters of the precinct for which the vote is taken should be counted, the spirit of all modern authority, as stated by McCrary on elections, § 225, and by this court in *Murphy v. Spokane*, 64 Wash. 681, 117 Pac. 476, is

"If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such a statute, must so hold, whether the particular act in question goes to the merits or affects the result of the election, or not. Such a statute is imperative, and all considerations touching its policy or impolicy must be addressed to the legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election."

See, also, 20 C. J. 102, § 88.

We, therefore, conclude that, under the facts existing in this case and the authorities, while the holding of the election for North LaConner precinct in South LaConner precinct was an irregularity, it was not such an irregularity as, after the election, can void the election conducted therein.

(2) Is a special election, where the district is to be bonded, legal and binding upon the district where no legal notices of the election are posted in the voting precinct as prescribed by law?

The same act of 1927, *supra,* also provides in part that notice of the election shall be given

" . . . by posting, for at least ten (10) days prior to the date of election, a written or printed notice of such election in each polling place within such port district." Rem. 1927 Sup., § 9691.

It is contended that the posting of the notice of election in the city hall in South LaConner precinct was not posting in the polling place in North LaConner precinct, and that the posting at the public place in North LaConner precinct was no posting required by law, and therefore the posting amounted to nothing.

Many cases from other jurisdictions are cited to sustain appellants' contention.

There are numerous cases which hold that statutory requirements as to notice of an election to vote on issue of bonds is mandatory, and must be complied with or the election will be illegal.

We have held to the contrary and in cases which involved elections to vote on issues of bonds. *Rands v. Clarke County,* 79 Wash. 152, 139 Pac. 1090, involved the legality of a special election for the issuance of county bonds. The notice of election was published a shorter time than required by law. We held the election valid, holding the requirements as to notice to be merely directory and not mandatory, it not ap-

pearing from the record that the result of the election might have been different had there been a strict compliance with the statutory requirements.

Again, in *Lee v. Bellingham School District No. 301,* 107 Wash. 482, 182 Pac. 580, involving a special bond election, where the statute required three publications of the notice in two daily papers before the election, and it was actually published only twice in each daily paper before the election, we referred to the fact, shown in that case, that the matter of the election had been one of general public notoriety, and held that, inasmuch as the statute did not expressly declare that the want of strict compliance with the statutory requirements should make the election void, it would not be there so held.

Inasmuch as the facts and the findings in this case disclose that the special election involved here was of general notoriety in North LaConner precinct and that notice of the election was posted in the place where the election was held in that precinct, and published as required by the statute in the newspapers for the prescribed time, appellants have shown no injury by the lack of legal notice.

 (3) The last contention of appellants is that a special election, where the district is to be bonded, is not legal and binding upon the district where the same is presided over by election officers not residents or voters within the precinct and within the port district.

Here again the constituted authorities did not obey the law and, possibly, could have been compelled so to do before the election was held; but here again the failure to comply with the statute by appointing election officers who were not residents or voters within the precinct or the port district, was also an irregularity not to be held as invalidating the election. There is no fraud charged against these election officers.

They were appointed and qualified by taking the oath required by law to conduct the election, and conducted it in every way according to law, so far as the record discloses.

The case is somewhat similar to that of *Murphy v. Spokane, supra,* where certain of the judges and inspectors appointed by the city council failed to qualify or to serve, and no other persons were elected in their places. In each of the precincts a less number of officials than the law required, were present. It also appeared in that case that some of the polling places were not opened at the time required by law, nor kept open for the required time.

We discussed the applicable principles relative to such situations, and reviewed many texts and authorities and reached the conclusion that all of the irregularities disclosed were not sufficient to invalidate the election. See, also, 9 R. C. L., § 32, p. 1012.

Although the proper limits of this opinion preclude the review of all the cases cited by appellants, they have all been considered.

We conclude that the decree of the lower court is right, and it is affirmed.

MITCHELL, C. J., TOLMAN, and BEALS, JJ., concur.

FULLERTON, J.—I concur in the result.