[No. 27347. Department One. October 19, 1938.]

THE STATE OF WASHINGTON, *on the Relation of Joseph T. Pemberton, Plaintiff,* v. THE SUPERIOR COURT FOR WHATCOM COUNTY, *James B. Kinne, Judge, Respondents.*[1]

[1]Reported in 83 P. (2d) 345.

*Bixby & Neal* and *Orville K. Algyers,* for relator.

*Tim Healy, Abrams & McCush,* and *Frank W. Radley,* for respondents.

ROBINSON, J.—Relator and Harley W. Covalt were candidates for the Democratic nomination for prosecuting attorney of Whatcom county at the recent primary election held on September 13th. The affidavit filed by relator to contest the certificate of nomination states that the official canvass of the votes cast was completed September 30, 1938; that relator, according to the canvass, received 5,767 votes, and Covalt, 5,776. The affidavit was filed on October 3rd, and an order providing for service of a copy on the respondent and

setting the hearing for October 10th was entered the same day. Covalt appeared on October 6th and demurred to the affidavit. This demurrer was heard the same day, presumably by agreement.

The respondents contend that the proceeding was prematurely commenced; this contention being based upon the fact that relator had filed a similar affidavit on September 26th and had an order issued thereon. Since the affidavit of October 3rd was filed under the same case number, it is claimed that it was merely amendatory of the former affidavit. But it is clear from the record that, in filing the second affidavit, the relator intended to commence a new action. His application for leave to do so states that he desired to file it because the former affidavit may have been prematurely filed, and he prayed for, and received, a new order based on the second affidavit, directing its service and fixing a date for the hearing.

There is no reason why the relator could not abandon the first proceeding and begin another. *Broadbent v. Keith*, 15 Cal. App. 382, 114 Pac. 996. It being clearly his intention to commence a new proceeding, the fact that the second affidavit was given the same file number as the first is of no moment.

This proceeding was admittedly brought under § 25, chapter 209, Laws of 1907, p. 471, which is carried in Remington's Revised Statutes as § 5202 [P. C. § 2246]. The respondents point out that Covalt is the sole party cited into court, and contend that the court could take no effective action in the matter, even if all the recitals of the affidavit are true; since, it is said, no order can bind the auditor or the members of the canvassing board unless they are given their day in court.

Section 5202 is as follows:

"Whenever it shall appear by affidavit to any judge of the supreme court or superior court of the county that any error or omission has occurred or is about to occur in the printing in the name of any candidate on official ballots, or that any error has been or is about to be committed in printing the ballots, or that the name of any person has been or is about to be wrongfully placed upon such ballots, or that any wrongful act has been performed or is about to be performed by any judge or clerk of the primary election, the county auditor, canvassing board or member thereof, or by any person charged with a duty under this act, or that any neglect of duty by any of the persons aforesaid has occurred or is about to occur, such judge shall, by order, require the officer or person or persons charged with the error, wrongful act or neglect, to forthwith correct the error, desist from the wrongful act, or perform the duty, and to do as the court shall order, or to show cause forthwith why such error should not be corrected, wrongful act desisted from, or such duty or order not performed. Failing to obey the order of such court shall be contempt. Any candidate at such primary election who may desire to contest the nomination of any candidate for the same office at said primary election may proceed by such affidavit so presented: Provided, that such affidavit may be presented within five days after the completion of the canvass by said canvassing board, and not later, and the candidate whose nomination is so contested shall, by order of such judge, duly served, be required to appear and abide by the orders of the court to be made therein."

It was contended, in *State ex rel. McAvoy v. Gilliam*, 60 Wash. 420, 111 Pac. 401, where a contest was attempted upon an affidavit similar to that in the case at bar, and where, as here, the contestee only was made a party defendant, that the court was powerless to proceed because the statute fixed no procedure. The court said, in part:

"It is true, no further specific procedure is pointed

out by the statute, but § 69, Rem. & Bal. Code, which is a general provision relating to courts, provides:

" 'When jurisdiction is, by the constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted, which may appear most conformable to the spirit of this code.'

"This section seems to supply any deficiency of procedure which is omitted in the primary law, and we think completely answers the objections named."

The statute does not contemplate that the election officials shall be cited into court in the first instance, nor at all, unless the court determines that it is necessary to order them to act, or refrain from acting, in a certain manner, in which case the order entered preserves the opportunity to show cause why it should not be obeyed. No final order affecting the election officers is contemplated, or can be entered, until they have been afforded the opportunity to appear and contest. This procedure satisfies all the requirements of due process.

In this case, the court has, by sustaining the demurrer, held that, even if all the recitals of the affidavit be true, the relator would not be entitled to an order directing the auditor to place his name on the ballot or forthwith show cause why he should not do so. Whether or not that holding was correct is the question before us for review.

The relator recites in his affidavit that, being duly qualified to do so, he became a candidate against Harley W. Covalt for the nomination of prosecuting attorney upon the Democratic ticket; and that, upon the unofficial returns, before the absentee votes were counted, he appeared to have thirty-nine more votes than Covalt. There were approximately 345 absentee

ballots, which the election board proceeded to canvass, and that, of these, some fifty in number "were challenged on various grounds, as hereinafter set forth at the time." These general allegations are followed by some fifteen pages setting out, with particularity, the names of fifty-one voters who cast absentee ballots which, relator says, were counted for Covalt, together with the reasons why these ballots are challenged. Relator further alleges that, in one precinct, the tally sheet showed ninety votes were cast in his favor, but that the precinct officials, through a mistake in addition, totalled them at eighty-five only, and that the canvassing board refused to correct the alleged erroneous total.

Before we take up the causes of challenge, it seems advisable to consider the statute concerning absentee voting. The statute now in force is chapter 41, Laws of 1933, Ex. Ses., p. 99, Rem. Rev. Stat. (Sup.), § 5280 [P. C. § 2086-11] *et seq.* The statute provides that any registered voter who expects to be absent from his precinct or unable to vote by reason of physical disability may vote by absentee ballot. Any elector desiring to avail himself of the privilege must secure a registration certificate. The application for the certificate must contain a sworn statement that he will be absent or physically incapacitated. The certificate, if issued, is made in duplicate and one retained in the files of the registration officer. Of the other, the statute says:

"The elector shall at any time prior to the day of such election, *present, in person or through the United States mails* said certificate to the county auditor of the county of his residence, or the city or town clerk, depending upon the scope of said election and the election officer issuing the ballots therefor." (Italics ours.) Rem. Rev. Stat. (Sup.), § 5281 [P. C. § 2086-12].

It is next provided that the county auditor or city or town clerk, as the case may be, on receiving the cer-

tificate of registration or a request for an absentee ballot, shall compare the same with the duplicate retained, and, upon satisfactory comparison,

" . . . *shall deliver to the elector, or mail to the elector at the postoffice address to be designated by such elector, the proper blank ballot of such election,* or in case of a primary election a blank ballot of the party for the candidate for which the elector desires to vote. *Such ballot must be marked in the presence of an officer authorized to administer oaths and no absentee vote shall be valid unless the same is posted or, if delivered by other means, delivered to the election officer designated, not later than the day of such election.* There shall be sent also a small envelope that shall have no mark upon it which may serve to identify it or the ballot within it with the voter; also a larger envelope upon which there shall be printed the name and post office address of the auditor issuing the same, and a blank affidavit in the following form:

"State of ........................................................ ⎱ ss.
"County of ........................................................ ⎰ ss.

"I, ........................................................, do solemnly swear that I am a resident of and qualified voter in ........................................ precinct of ................................ city in ................................ county, Washington; that I have the legal right to vote at the election to be held in said precinct on the ............ day of ................................, 19............, and that I have herein enclosed my ballot for such election, duly marked as required by law in the presence of ........................................................, a ................................ in and for ................................ county, state of ................................

(Signed) ........................................................,
 Voter.

"Subscribed and sworn to before me this ................ day of ................................, 19............

........................................................
 (Signature of official)
 (Official title)

"There shall be included with each ballot sent to an absent voter separate printed instructions as follows:

" 'Upon receipt of this ballot you will, in the presence of an officer authorized to administer oaths, *in*

*such location that no other person can see how you vote,* proceed to mark the same in accordance with instructions enclosed. Fold, enclose and seal the ballots in the smaller envelope and then enclose the smaller envelope containing the ballot in the larger envelope. Make out the affidavit printed upon the larger envelope and swear to the same before such notary public or other officer authorized to administer oaths, place the necessary postage upon the envelope, address the same to the county auditor of the county in which you are registered, at the proper address, if same is not already addressed, and deposit the same in the post office or in some government receptacle provided for the deposit of mail matter. *The ballot to be valid must be mailed, or if sent by any other means, delivered to the county auditor aforesaid, not later than the day of election.*'" (Italics ours.) Rem. Rev. Stat. (Sup.), § 5282 [P. C. § 2086-13].

It is altogether impossible to set out the allegations of the affidavit in detail. It is alleged, generally and in substance, that Roy E. Endicott, a notary public employed by the engineer's office of Whatcom county, Frances Glazer, a notary public employed by the county as the private secretary of Covalt, and Lois Covalt, his wife, were very active in soliciting voters to cast absentee ballots for Covalt and in assisting them to do so, and so conducted themselves in the premises that at least fifty-one ballots, marked for Covalt and returned to the county auditor, were illegal.

After a careful analysis of the body of the affidavit, we find that the challenges may be classified as follows: It is alleged,

(1) That, in all fifty-one instances, the certificate of registration was neither mailed to the county auditor by the voter nor delivered by him to the county auditor, as required by law;

(2) That, in thirty-seven instances, the affidavit of the voter, on the outer envelope, was taken by Frances

Glazer; it being contended that she was disqualified to take such affidavits by reason of her interest in the result of the election;

(3) That, on September 12th, the day before the election, Endicott went to Seattle and hunted up ten invalids, most of whom were in the Riverton Tuberculosis Sanatorium, and induced them to apply for absentee ballots, taking their acknowledgments on the applications; that he took the applications to Bellingham and procured the corresponding absentee ballots; that, on the morning of the election, Frances Glazer took the absentee ballots to Seattle, had them marked in her presence, acknowledged the affidavits on the outer envelopes, and then took them to Bellingham and delivered them to the county auditor;

(4) That the ballots of six voters, marked for Covalt, were actually so marked by his wife; that three others were so marked in the presence of, and with the assistance of, Mrs. Covalt; that another was marked by the voter's daughter in the presence of Mrs. Covalt, and three more in the presence of Mrs. Covalt;

(5) That the ballots of two voters were marked for Covalt by Frances Glazer, and that the majority of them were so marked in her presence;

(6) That the ballots of two voters, man and wife, were marked by their son-in-law, and the ballot of another voter, by her daughter;

(7) That two voters marked their ballots for the relator, and that Frances Glazer refused to permit them to seal the envelopes, but took them away unsealed, and that some person unknown erased the marks on these ballots after the name of Joseph T. Pemberton and placed marks after the name of Harley W. Covalt thereon before they were delivered to the auditor's office.

It is also alleged that one or two of the voters were mentally incompetent, that two could not read the English language, and that two had been nonresidents of the precincts from which they voted for more than a year.

No fraud was charged, except by inference. It is, however, alleged that the canvassing board delayed completing the canvass in the hope of preventing the relator from filing a contest in time to have it finally determined before the election.

 The respondents contend that the action of the canvassing board is absolutely final, and not subject to review. Rem. Rev. Stat. (Sup.), § 5285 [P. C. § 2086-15], which is §5, chapter 41, Laws of 1933, Ex. Ses., p. 102, reads as follows:

"On the sixth day after any general or primary election it shall be the duty of the county auditor in the presence of the chairman of the board of county commissioners and the prosecuting attorney to open each larger outside envelope in such a way as not to injure the seal or in any way open the smaller envelope containin[g] the ballot, or deface the affidavit of the larger outside envelope, and to remove said smaller envelope containing the ballot and mark upon the outside of said inside envelope the name or number of the precinct, city and county in which the ballot is to be counted and nothing whereby the identity of the voter can be known. *If the voter's affidavit on the larger envelope is in due and regular form the envelope containing the ballot shall be signed by the opening officers above named and approved as a valid vote.* The opening officers shall then seal securely in one package the larger outside envelopes, certificates and affidavits of voters filed as herein provided, attached securely together and the same shall be kept by said auditor for future use in case any question shall arise as to the validity of the vote. The smaller inside envelopes containing the ballots shall be filed by the auditor and kept securely locked until the time for canvassing the votes of such county. Upon the

canvassing of the votes by the canvassing board of such county, whenever any precinct is called in which there shall be on file one or more such envelopes, the board shall cause such envelopes to be opened, and shall canvass and count the same for such precinct as nearly as possible in the same manner as such votes would have been counted had they been cast in such precinct, entering the same in the same in poll-book as absent votes, and shall modify the election returns of such precinct accordingly. Such ballots shall become a part of the returns of such precinct and shall be kept or destroyed accordingly: *Provided, however,* No such absentee ballot shall be canvassed or counted unless the same shall have been directed to and posted, or if delivered by any other means than mail, received by the auditor not later than the day of such election." (Italics ours.)

The contention that the action of the canvassing board is final is based upon that sentence of the foregoing section which we have italicized. We think that the sentence which follows it shows that the contention is without merit.

■ Taking up the cause of challenge No. 1, it is our opinion that the challenges on that ground were properly rejected. We think the provision that the registration certificate must be mailed or delivered in person is directory merely. In the case of a bed-ridden voter, it would restrict him to the mails; but the law recognizes (see final sentence of § 5282) that even the ballot itself, which is a document of at least equal importance, may be returned to the auditor "by other means."

■ As to No. 2, the contention here is that Frances Glazer's interest in the election of respondent, she being his private secretary, was such as to disqualify her from taking acknowledgments of voters on the outer envelopes. We think there is no merit in this contention. *Spokane & Idaho Lumber Co. v. Loy,* 21 Wash. 501, 58 Pac. 672, 60 Pac. 1119.

No. 3: In so far as the relator argues that Endicott, Miss Glazer, and Mrs. Covalt acted wrongfully in soliciting votes, this contention must at once be rejected. An election is always a struggle to get out the vote, in which the candidate, his friends and relatives may freely participate. There would seem to be no difference in principle between furnishing an automobile to take an old person to the polls and in furnishing him with an absentee ballot, both services being given with the same end in view. In our opinion, Endicott violated no law in persuading voters to apply for a certificate of registration or in taking their acknowledgments on those applications; nor did the auditor violate any mandatory duty in giving the ballots to the voters' agents instead of mailing them, or delivering them personally, to the voters; nor did Frances Glazer violate any law in taking their acknowledgments, or any mandatory law in returning the sealed ballots to the auditor.

We agree with the relator that the cumulative effect of violating so many directory provisions may be unfortunate, and a recognition on the part of this court that votes may be legally cast in this manner may tend to harmful results, especially since absentee voting seems to be rapidly increasing. But, if this turns out to be true, the legislature can amend the law.

"If permission to vote as an absentee voter results in large numbers thus voting and thereby enlarges the possibility of fraudulent and illegal voting, the subject is one for legislative action and the matter can easily and speedily be corrected by the Legislature. The court has nothing to do with such legislative functions and should not legislate judicially." *Sheils v. Flynn,* 252 App. Div. 238, 300 N. Y. Supp. 536.

We have not overlooked the case of *Wichelmann v. Glencoe,* 200 Minn. 62, 273 N. W. 638, wherein the violation of similar provisions of the Minnesota statute

is regarded somewhat more seriously. But the actual decision seems to be made upon the point that, in that case, ballots were delivered to the voters even before the required, verified applications were made out or presented.

As we have heretofore held, courts should not be too ready to reject ballots or votes on account of the violation of technical requirements, especially in the absence of a charge of fraud, lest, in so doing, they disfranchise persons who voted in entire good faith. *State ex rel. Doyle v. Superior Court,* 138 Wash. 488, 244 Pac. 702; *Loop v. McCracken,* 151 Wash. 19, 274 Pac. 793; *McArtor v. State ex rel. Lewis,* 196 Ind. 460, 148 N. E. 477; *Goodell v. Judith Basin County,* 70 Mont. 222, 224 Pac. 1110.

No. 4: We now come to a much more serious matter. It is categorically alleged that Mr. Covalt's wife marked six of the challenged ballots for her husband, and that three others were so marked in her presence and with her assistance.

In the case of *State ex rel. Hanson v. Wilson,* 113 Wash. 49, 192 Pac. 913, where it was found that the wife of a candidate, and not a member of the election board, "went into the booth with [six voters] and assisted in marking their ballots," the six votes were declared illegal and the action of the trial court in cancelling the certificate of election issued by the canvassing body was affirmed, the court saying, in part:

"The trial court concluded and determined, and we think properly so, that the six votes were illegal and should not have been counted, thus leaving relator with only one hundred and forty votes, whereas W. A. Hunter had received one hundred and forty-three votes altogether in the primary election. No exceptions were taken to the findings of the trial court, which are amply sustained by the evidence which we have examined. Indeed, it is relator's contention that as there is no finding nor any proof to show other than

that whatever assistance was given to the six voters by relator's wife was given at the request of the voters openly in the presence of the election board, without protest or objection from the board or any of its members, without solicitation of relator or his wife, and without influence, fraud or corruption upon or towards the six voters, that therefore the six votes were legal and proper to be counted for relator. We are satisfied, however, the approval of such contention would open wide the way to inroads upon the secrecy of the ballot and encourage evasions of plain statutory provisions essential to secure and protect the purity of elections. There is a marked difference between rejecting the total vote of a precinct because of one or more illegal votes, and the rejection of only illegal votes. The latter is the situation here."

We are unable to distinguish the case at bar from the case of *State ex rel. Hanson v. Wilson*. In that case, it was not found that any fraud or corruption was actually practiced. It would seem to be an even greater threat to the secrecy of the ballot to permit what is alleged to have occurred in this case, for absentee ballots are marked in hospitals, in bedrooms, and in all sorts of private places, where the opportunity for the commission of fraud is greater than at a regular polling place equipped with election officials and often guarded by unofficial "watchers" stationed there by parties or candidates.

No. 5: We do not think that this ground of challenge is valid. The ballot is required to be marked in the presence of an officer authorized to administer oaths. Frances Glazer was acting as such officer and, in a limited sense, may be said to have been an election official.

No. 6: Here, it is alleged that the ballots of a man and wife were marked by their son-in-law, and the ballot of another voter, by her daughter. But in each of these cases the context shows that the voters were

more or less physically disabled, and we are not prepared to say that their votes were illegally marked under those circumstances.

No. 7: This challenge affected two votes. It is alleged that the ballots were delivered to the voters by Frances Glazer, and that the voters marked them for the relator, Joseph T. Pemberton, and that Frances Glazer refused to permit them to seal the envelopes containing the ballots, and that some person unknown erased the marks after the name of Pemberton and placed marks after the name of Harley W. Covalt thereon before the ballots were delivered to the auditor's office. If this be true, these votes were illegal.

If this opinion is to be of any benefit to the relator, it must be announced at once, and for that reason we do not delay the matter to pass upon the other allegations of the affidavit, for we have already found that, if the allegations are true, and this, for the present purpose, the demurrer admits, at least eleven illegal votes were counted for the relator's opponent, Mr. Covalt. The canvass gave him a majority of but nine. If the relator can prove his allegations, he will be entitled to have the certificate of the canvassing board cancelled and an order directing the auditor of Whatcom county to place his name on the ballot or show cause why he should not do so. The trial court, therefore, erred in sustaining the demurrer and dismissing the proceedings.

The order under review is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

It is ordered that the remittitur in this case be sent down forthwith.

STEINERT, C. J., GERAGHTY, BLAKE, and SIMPSON, JJ., concur.