15 N.J. Super. 11 (1951)
83 A.2d 11
CLIFFORD JOHN SHARROCK, ET AL., AS RESIDENTS AND LEGAL VOTERS, ETC., PLAINTIFFS-APPELLANTS,
v.
BOROUGH OF KEANSBURG, A MUNICIPAL CORPORATION, ETC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 30, 1951.
Decided August 9, 1951.
*13 Before Judges JAYNE, WM. J. BRENNAN, JR., and VANDERWART.
Mr. Abraham Frankel argued the cause for appellants (Messrs. Frankel & Frankel, attorneys).
Mr. William R. Blair, Jr., argued the cause for respondents (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
A precursory narrative of the significant events which have been productive of this litigation is essential. The information is acquired from the stipulation of counsel.
*14 At a regular meeting of the municipal council of the Borough of Keansburg convened on June 26, 1950, a petition signed by the requisite number of qualified electors of the municipality and in all other respects in conformity with the provisions of R.S. 33:1-47.1 was presented requesting the submission of a referendum to the voters of the following questions at the next ensuing general election.
"Shall sales of alcoholic beverages at retail be permitted in this municipality on week days between the hours of 6 A.M. and 2 A.M. of the following morning?
Shall sales of alcoholic beverages at retail be permitted in this municipality on Sundays between the hours of midnight Saturday and 2 A.M., and between the hour of noon and 2 A.M. of the following morning?"
In recognition of the petition the borough council on July 5, 1950, adopted a resolution directing the county clerk to print the questions upon the official ballots to be used at the election. A certified copy of the resolution was dispatched to the county clerk on July 20, 1950, and to the office of the Division of Alcoholic Beverage Control on October 1, 1950.
On October 4, 1950, the assistant deputy director of the Division acknowledged the receipt of the copy of the resolution and in his communication stated:
"We suggest that you remind the Monmouth County Clerk of the Explanatory Statement which he is required to print upon the official ballot immediately below the Public Questions at a referendum to be held, as here, under Revised Statutes, 33:1-47.1.
It is to be understood that if a majority vote Yes on both Questions, the only hours of permitted sale in the Borough will be those fixed by the referendum; that if a majority vote Yes on one Question and No on the other, the hours fixed in the Question voted Yes will be the only permitted hours of sale (weekdays or Sundays, as the case may be), and there will be no change effected by referendum on the Question voted No; and that if a majority vote No on both Questions, the referendum will have effected no change at all in the Borough's present hours regulations."
*15 On October 5, 1950, the borough clerk addressed a letter to the county clerk in which he acquainted the latter, verbatim et literatim, with the observations of the deputy director expressed in his communication of October 4, 1950.
Sample ballots were prepared and mailed to the qualified voters by the district boards of elections on October 31, 1950, and on November 1, 1950. An "Explanatory Statement" appeared in its appropriate position on the sample and official ballots but read as follows:
"It is to be understood that if a majority vote Yes on both Questions, the only hours of permitted sale in the Borough will be those fixed by the referendum; that if a majority vote Yes on one question and No on the other, the hours fixed in the Question voted Yes will be the only permitted hours of sale (weekdays and Sundays, as the case may be), and there will be no change effected by the referendum on the question voted No; and that if a majority vote No on both Questions, the referendum will have effected no change at all in the Borough's present hours regulations."
Of the 3,095 registered voters in the borough, 2,097 voters cast ballots at the election. Of those who voted on the propositions, 1,363 voted "yes" on the first question and 658 voted "no." On the second question 1,325 voted "yes" and 680 voted "no." It is significant to notice that of the 2,097 ballots cast, 2,021 voters expressed their wishes on the first question and 2,005 on the second question. The highest number of the aggregate votes for the candidates for any one public office was 1,965.
The result of the referendum having been officially determined, the borough clerk in obedience to the directions of the statute forthwith notified in writing the Director of the Division of Alcoholic Beverage Control and the governing body of the borough of the action taken by the legal voters.
The plaintiffs, legal voters of the borough, thereupon filed their complaint in the Law Division of this court to contest the election in so far as it purports to express the approval by the voters of the two propositions submitted to them.
Specifically, the sole ground of contest is that the county *16 clerk failed to cause to be printed on the ballot immediately beneath the printed questions the "Explanatory Statement" in the verbiage appearing in the pertinent section of the statute. R.S. 33:1-47.1, as amended L. 1945, c. 259, p. 786, § 1; L. 1948, c. 20, p. 79, § 5; L. 1949, c. 296, p. 905, § 5.
The quotation from the statute is: "Explanatory Statement  A `Yes' is a vote to permit sales only within the hours set forth in the question or questions printed above. A `No' vote is a vote against changing the hours during which sales of alcoholic beverages are now permitted in this municipality."
Parenthetically, the learned trial judge in his conclusions incidentally commented that the "Explanatory Statement" printed upon the ballot displayed more clarity of expression than the one contained in the statute.
Noticeably, this is not an instance where there has been an omission of any explanatory and instructive statement on the ballot relative to the referendum. Here the insistence of the appellants is that a rigid, if not literal, compliance with the terms of the statute is positively obligatory and that unless the statement on the ballot imitates the verbiage prescribed by the statute the election on the referendum must be annulled.
All counsel interested in the present appeal acknowledge that they have been unable to discover any reported decision construing the terms of this particular passage of R.S. 33:1-47.1.
The processes of public elections in this country are not of common law origin. Except for the express requirements of the constitutional security they are the creatures of statutory law. Therefore the courts refrain from an indulgence in any judicial action that refashions legislation regulating and facilitating the conduct of elections and which is calculated to secure the right of suffrage and the free expression of the choice of the voter.
And so, where the statute expressly declares that a specified irregularity shall nullify an election, the courts, irrespective of their views of the wisdom or serviceability of *17 the requirement, uniformly respect the legislative declaration.
But where, as here, there is no such legislative declaration, the courts consider the nature of the irregularity, its materiality, the significance of its influence and consequential derivations in order to determine whether the digression or deviation from the prescribed statutory requisitions had in reasonable probability so imposing and so vital an influence on the election proceedings as to have repressed or contravened a full and free expression of the popular will, and thus deduce the legislative intent reasonably to be implied.
It has been in the pursuit of that rationale that our courts have characterized certain clauses of our election laws as mandatory and others directory. The fact, however, is that all of the unqualified directions expressed in such statutes are mandatory in the sense that they impose the duty of obedience on all those who are within their compass.
Although it was many years ago that Lord Mansfield said in the case of Rex v. Loxdale, 1 Burr. 447, "there is a known distinction between circumstances which are of the essence of a thing required to be done by an act of Parliament and clauses merely directory," it would be a delicate task to phrase with conciseness and exactitude of expression a rule of universal application by which to distinguish between mandatory and directory provisions. The predominant inquiry centralizes on the intention of the Legislature. To hold that every departure from the terms of our election laws shall taint the election proceedings with a fatal blemish would be followed by far-reaching and most disturbing consequences. It has been repeatedly stated that whether a statute is mandatory or not depends on whether "the thing directed to be done is of the essence of the thing required." 2 Lewis' Sutherland on Stat. Const. (2d ed.) § 610. What has been made a matter of the essence is often to be ascertained only by judicial construction. Cf. Sheldon v. Sheldon, 100 N.J. Eq. 24 (Ch. 1926). "The intention of the Legislature is to be taken or presumed according to what is consonant to *18 reason and good discretion." Morris Canal & Banking Co. v. Central Railroad Co., 16 N.J. Eq. 419 (Ch. 1863); May v. Nutley, 111 N.J.L. 166, 168 (Sup. Ct. 1933).
For illustration, all official ballots are to be prepared by a public officer in accordance with the statutory instructions relative to their form and contents. The appropriate terms and conditions of the statute constitute the mandate which the public officer is not privileged to disobey. If his neglect or willful disregard has served to frustrate or thwart the full and free expression of the will of the voters who are compelled to vote the ballot thus prepared or abstain from voting, his disobedience will vitiate the ballots and nullify the affected election return. Such will be regarded as in accordance with the intent of the Legislature. But if it is evident that notwithstanding the dereliction of duty of the officer there was a fair election and an honest return and no violation of such matters as the recognized inherent and inviolable rights of the voters, the courts in the public interest have frequently ignored the harmless irregularity. In re Smock, 5 N.J. Super. 495 (Law Div. 1949); 18 Am. Jur. 300, § 183.
The following quotation has a familiar cadence: "The right of suffrage is too sacred to be defeated by an act for which the voter is in no way responsible, unless by the direct mandate of a valid statute no other construction can be given." Bliss v. Woolley, 68 N.J.L. 51, on p. 54 (Sup. Ct. 1902); Lane v. Otis, 68 N.J.L. 656, on p. 660 (E. & A. 1903); Attorney-General v. Belleville, 81 N.J.L. 200, on p. 206 (Sup. Ct. 1911).
And so it is not to be inferred from the conclusion expressed in this opinion that the county clerk is at liberty at the suggestion of anyone to ignore or circumvent the terms and provisions of the election statutes applicable to his official functions.
But we are not here concerned with the liabilities of the official who prepared the ballots. The irregularity was artless, not artful. The subject of our inquiry is confined to the propriety of the action of the trial judge in declining in *19 the circumstances of the present case to declare the election legally ineffectual in respect to the two propositions, thus resulting in a judgment of dismissal.
Initially we recognize that the informality in the composition of the "Explanatory Statement" printed on the ballots might have been brought to the attention of the judicial branch before the date of the election. R.S. 19:14-20.
The editorial staff of American Jurisprudence (18 Am. Jur. 301, sec. 183) has stated: "As a rule, one who does not avail himself of the opportunity afforded by statute to object to irregularities in the ballot prior to the election may not afterward raise objections thereto."
We do not, however, restrict our review of the present case to the consideration of the personal interests of the individual plaintiffs. Our scrutiny encompasses as well the interests of the voters and the essentials of the public welfare.
The right of suffrage in a government of and by a free people must always be regarded with jealous solicitude. To overthrow the expressed will of a large number of voters for no fault of their own and solely because of some harmless irregularity would in many cases defeat the paramount object of the election laws.
"Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish; and except where they specifically provide that a thing shall be done in the manner indicated, and not otherwise, their provisions designed merely for the information and guidance of the officers must be regarded as directory only, and the election will not be defeated by a failure to comply with them, providing the irregularity has not hindered any who were entitled from exercising the right of suffrage or rendered doubtful the evidence from which the result was to be declared." Cooley's Const. Lim. (7th ed.) § 928.
The general rule is quite comprehensively and succinctly stated in the following quotation taken from d'Espard v. Essex Fells, 84 N.J.L. 181, 182 (Sup. Ct. 1913):
"In any event it may be said that when the fact clearly appears that a statutory provision is entirely directory in character; that *20 the essential purpose of the law has been answered; that no claim is made that any substantial fraction of the electors have been misled, and that to all intents and purposes the legislative scheme has been complied with by a substantial expression of the popular will, the mere failure of punctilious compliance by a local administrative official, entrusted with the performance of statutory details of the Election law, will be held not to subvert the popular will thus practically expressed."
In harmony with the general rule are the decisions in Burrough v. Branning, 9 N.J.L.J. 110 (Cir. Ct. 1886); Winters v. Warmolts, 70 N.J.L. 615 (Sup. Ct. 1903); Brown v. Street Lighting District, 70 N.J.L. 762 (E. & A. 1904); Fletcher v. Mayor, &c., of Borough of Collingswood, 59 A. 90 (Sup. Ct. 1904); Jones v. Brink, 49 N.J.L.J. 299 (Cir. Ct. 1926); In re Clee, 119 N.J.L. 310, 321 (Sup. Ct. 1938).
We conclude that the well established rule so expressed is applicable to the factual characteristics of the present case.
We have assumed but do not decide that the complaint alleged a cause of contest comprehended by R.S. 19:29-1.
Judgment affirmed. No costs.