57 N.J. Super. 244 (1959)
154 A.2d 631
IN THE MATTER OF THE APPLICATION OF ROBERT E. MOORE TO SET ASIDE THE NOMINATION OF JOSEPH MAYERS FOR THE REPUBLICAN NOMINATION FOR TOWNSHIP COMMITTEE OF THE TOWNSHIP OF LITTLE FALLS, COUNTY OF PASSAIC, AND STATE OF NEW JERSEY, AS A RESULT OF THE PRIMARY ELECTION HELD APRIL 21, 1959.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1959.
Decided September 28, 1959.
*245 Before Judges GOLDMANN, FREUND and HANEMAN.
*246 Mr. L. Bruce Puffer, Jr., argued the cause for appellant (Messrs. Shanley & Fisher, attorneys).
Mr. Mitchell F. Donato argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Joseph Mayers appeals from a Law Division judgment declaring void the absentee ballots cast by Elmer Johnson and Henry Chandler for him as Republican nominee for the Little Falls Township Committee at the April 21, 1959 primary election; adjudging the vote between Mayers and Robert E. Moore, his opponent, a tie; and ordering that the certificate of nomination theretofore issued to Mayers be annulled. The judgment also voided an absentee ballot cast by one Mildred Rhodus, but this ballot is not involved on this appeal because it could not be determined for whom she voted.
A total of 2,098 votes was cast at the primary election, 10 being absentee ballots. Mayers received 1,050 votes and Moore 1,048. A recount did not change the result. Moore then filed a petition in the Superior Court, Law Division, pursuant to N.J.S.A. 19:29-1 through 3, to invalidate certain absentee ballots, and to have Mayers' nomination as Republican candidate for the township committee set aside and petitioner Moore declared the winner. Among the reasons advanced by Moore was that the acknowledgments on the certificates submitted with the ballots of five civilian absentee voters were not taken in strict accordance with N.J.S.A. 19:57-17. At the hearing this contention was dropped as to three of the voters and continued against only two, Johnson and Chandler, the claim being that each had filled out his absentee ballot in the presence of others and before it had been exhibited unmarked to the notary public who took the acknowledgment, in direct contradiction to its wording:
"Sworn to and subscribed before me this ____ day of ____ 19__, and I hereby certify that the affiant exhibited the enclosed *247 ballot to me unmarked, and that he then in my presence and in the presence of no other person and in such manner that I could not see his vote, marked such ballot and enclosed and sealed the same in this envelope without my seeing or knowing his vote, and that the affiant was not solicited or advised by me to vote for or against any candidate or proposition."
The Law Division judge dismissed all of Moore's contentions except the last mentioned. However, during the hearing the judge, on his own motion, raised the question of whether the certificates, forwarded to every absentee voter along with the ballot, had been sufficiently filled in by Johnson, Chandler and Rhodus. Moore's petition had not alleged any such defect. The court held that Johnson and Chandler  we disregard a similar ruling as to the Rhodus ballot  had failed to complete the certificate in the manner required by the statute. This, together with their failure to follow out the procedure set forth in the acknowledgment, was held to be an irregularity sufficient to invalidate the Johnson and Chandler votes. The result, as indicated, was a tie in the Republican primary.
The circumstances as to the marking of the ballots by Johnson and Chandler and the administration of the oaths by the notary public who took their acknowledgment are not in dispute.
Johnson, a man well along in years, lives at a rest home in Little Falls operated by a Mrs. Carra. He suffers from glaucoma and is blind. He is also afflicted with arteriosclerosis and hypertension. Chandler, 86 years old, lives at the same place. He suffers from physical senility and has a discharging lesion of the knee. Dr. James F. Stokes, who treated both men, said that Chandler had cellulitis and possibly osteomyelitis. In his opinion, neither man had been medically fit to go to the polls on primary day.
Johnson and Chandler had applied for civilian absentee ballots because of their physical disability. N.J.S.A. 19:57-4. The county clerk reviewed the applications and approved them. N.J.S.A. 19:57-10. Thereafter he forwarded *248 the requested absentee ballots by mail. N.J.S.A. 19:57-11. Accompanying each ballot were printed instructions, "Information for absentee voters," indicating how it was to be filled in and listing the names of the Republican and Democratic primary candidates. Moore and Mayers were the only Republican nominees for township committee at that election. With each absentee ballot the county clerk also sent two envelopes, one to be inserted in the other. The outer envelope was addressed to the county board of elections. The inner was designed in the manner set out in N.J.S.A. 19:57-16, i.e., it could be sealed after the ballot had been inserted, and its flap was large enough for the printing of the certificate prescribed by N.J.S.A. 19:57-17. The flap was so arranged that the margin containing the certificate could be folded after the inner envelope had been sealed, so that this envelope together with its attached certificate could be placed in the outer envelope.
On the front of the inner envelope the county clerk had caused to be printed the following:

"Complete Ballot as Soon as Possible After Receipt Instructions to Absentee Voter
1. Mark your ballot for the candidates of your choice. (And for or against the propositions appearing thereon)
2. Insert completed ballot in this envelope.
3. Complete the Certificate attached to the flap of this envelope.
4. Have signature witnessed by notary public or other authorized officer.
5. Seal this envelope. Do Not Detach the Certificate.
6. Insert this envelope containing the ballot in the return envelope provided, which is already addressed to the proper Board of Elections and affix sufficient postage.
7. Put in the mail as soon as possible. Unless Ballot is received by County Board of Elections before closing of Polls, it cannot be counted."
The certificate on the margin of the inner envelope flap carried the following text, taken from N.J.S.A. 19:57-17:
*249 
The shaded portion of the certificate deserves special comment. We were told at oral argument that originally it had contained other printing. The election officials had blocked out this section of the text in a dark silver ink, and then printed the language which appears above, on top of the silver overprint.
Mrs. Carra assisted Johnson in filling out his absentee ballot, at his request and according to his directions. Because of his blindness she had always had to guide his hand for any writing. She also helped him fill out the certificate attached to the envelope flap. While she was doing this Chandler came into the room and requested that she help him also. However, he marked his own ballot. She testified that only she and the two men were present when all this was done, each sitting on his own side of a table. Johnson and Chandler kept the ballots they had marked.
Mrs. Carra then arranged to have Dr. Stokes and his wife, who was a notary public, come to the rest home so that the *250 physician could execute the medical certificates required by N.J.S.A. 19:57-18 and Mrs. Stokes, at the same time, take the acknowledgments. This was done three or four days after Mrs. Carra had helped the men with their ballots. Johnson and Chandler signed the certificates in the presence of the notary. Dr. Stokes then attached his own medical certificates.
N.J.S.A. 19:57-23, entitled "Marking and handling of absentee ballots by voters," is the only section of the Absentee Voting Law (L. 1953, c. 211; N.J.S.A. 19:57-1 et seq.) specifically setting out the procedure to be followed in marking an absentee ballot and signing the accompanying certificate. It requires, simply, that the voter mark his ballot, place it in the inner envelope which is then to be sealed, and next fill in the certificate attached to the inner envelope, signing and printing his name at the end thereof in his own handwriting. The certificate, in the case of a civilian absentee voter, is to be sworn to before any official authorized by law to administer oaths in the place where the oath is given. Finally, the inner envelope is to be placed in the outer envelope, which is to be sealed and mailed to the county board of elections.
It will be seen that N.J.S.A. 19:57-23  and, indeed, the rest of the Absentee Voting Law  is devoid of any requirement that absentee ballots he exhibited unmarked to the acknowledging officer and marked only in the presence of such officer. The only place where such procedure is indicated is in the acknowledgment form set forth in N.J.S.A. 19:57-17  that part of the certificate which obviously is directed to the attention of the person taking the acknowledgment. Absent from this section of the act is any express declaration that failure to adhere literally to the procedure outlined therein will result in disenfranchisement.
In finding that Johnson and Chandler had neglected to fill in the certificate completely the Law Division judge noted that they had failed to set out the addresses at which they were confined and the names of their illnesses, and did not *251 place a checkmark in the designated square. Note that this information is called for in that part of the certificate which had been overprinted in the manner indicated. The court, as already mentioned, also found that the requirements of the statute that the ballot be exhibited unmarked to the notary public and then marked were not followed. Appellant concedes these deficiencies but argues that they are technical, minor, and certainly not sufficient to disenfranchise the two voters.
Disposition of the argument requires consideration of the approach and attitude of our courts. The Absentee Voting Law is relatively new, and the cases therefore few.
In Wene v. Meyner, 13 N.J. 185 (1953), affirming 26 N.J. Super. 363 (Law Div. 1953), the unsuccessful candidate for the Democratic gubernatorial nomination at the 1953 primary challenged 3,200 ballots on the ground that voters had not signed the declaration required by law, in violation of N.J.S.A. 19:23-45. Affidavits were presented at the hearing indicating "a general disregard of the strict letter of the regulation in some of the counties." In affirming the validity of the disputed votes the court said:
"* * * Where, as here, there is an unwitting omission of a formal requirement otherwise supplied in substance, the ballots are invulnerable; the overturning of the result in such circumstances would frustrate the will of the voters for errors and omissions of form not related to the merits; and this would do violence to the legislative will. In this regard, acts and omissions by the district board mandatory before election may for reasons of policy be deemed directory after the election, if it indubitably appears that the election result was not thereby prejudiced. The question is essentially one of fairness in the election. An election is not vitiated by the defaults of election officers not involving malconduct or fraud, unless it be shown that thereby the free expression of the popular will in all human likelihood has been thwarted. * * *" (13 N.J., at page 196)
The court referred to the language of Chief Justice Vanderbilt in Kilmurray v. Gilfert, 10 N.J. 435, 440 (1952), that "Election laws are to be liberally construed so as to effectuate their purpose. * * * They should not be construed so *252 as to deprive voters of their franchise or so as to render an election void for technical reasons."
Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951), involved a public referendum on a change of hours for the sale of alcoholic beverages at retail within the borough. Plaintiff voters challenged the result of the referendum because the county clerk had failed to cause to be printed on the ballot, immediately beneath the printed questions, an "Explanatory Statement" in the exact language appearing in the pertinent section of the statute, N.J.S.A. 33:1-47.1. The court held this did not void the referendum, saying
"And so, where the statute expressly declares that a specified irregularity shall nullify an election, the courts, irrespective of their views of the wisdom or serviceability of the requirement, uniformly respect the legislative declaration.
But where, as here, there is no such legislative declaration, the courts consider the nature of the irregularity, its materiality, the significance of its influence and consequential derivations in order to determine whether the digression or deviation from the prescribed statutory requisitions had in reasonable probability so imposing and so vital an influence on the election proceedings as to have repressed or contravened a full and free expression of the popular will, and thus deduce the legislative intent reasonably to be implied." (15 N.J. Super., at pages 16-17)
After quoting from Bliss v. Woolley, 68 N.J.L. 51, 54 (Sup. Ct. 1902), that "The right of suffrage is too sacred to be defeated by an act for which the voter is in no way responsible, unless by the direct mandate of the valid statute no other construction can be given," this court went on to say
"The right of suffrage in a government of and by a free people must always be regarded with jealous solicitude. To overthrow the expressed will of a large number of voters for no fault of their own and solely because of some harmless irregularity would in many cases defeat the paramount object of the election laws." (15 N.J. Super., at page 19)
In support, we referred to the following which appears in Cooley's Constitutional Limitations (7th ed.), § 928:
*253 "Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish; and except where they specifically provide that a thing shall be done in the manner indicated, and not otherwise, their provisions designed merely for the information and guidance of the officers must be regarded as directory only, and the election will not be defeated by a failure to comply with them, providing the irregularity has not hindered any who were entitled from exercising the right of suffrage or rendered doubtful the evidence from which the result was to be declared."
The Legislature has expressly provided that the Absentee Voting Law be liberally construed to effectuate its purpose. N.J.S.A. 19:57-3. With this in mind, as well as the specific provisions of the act and the spirit in which our courts have construed them, we proceed to a consideration of whether the omissions and irregularities here present warrant interference with the primary election result. We are clearly of the opinion that they do not.
Fraud is not alleged, nor is there any evidence of fraud or sharp practice. We attach no significance whatever to the suggestion at oral argument that Dr. and Mrs. Stokes may have favored Mayers' candidacy.
In assessing the extent of the deviation from the procedure outlined by the statute, and considering the purpose to be served by such procedure, it is clear that the Legislature sought to insure that an absentee ballot reflects the true and free choice of the voter. The evidence establishes that both Johnson's and Chandler's ballots reflected such choice. There was an honest, good-faith attempt on the part of these two elderly men to vote absentee.
Respondent Moore contends, preliminarily, that neither Johnson nor Chandler should have been allowed to cast a civilian absentee ballot because they were not ill or physically disabled on primary day. We find no merit in the argument. The medical certificate attached by Dr. Stokes to the Chandler certificate was "Senility and difficult to move about  Cannot go to the polls." (Incidentally, N.J.S.A. 19:57-18 does not require that the physician's certificate specifically state the nature of the sickness or physical *254 disability.) The medical certificate attached to Johnson's certificate read: "Has glaucoma with poor vision and cannot go to the polls." The medical certificates were accepted by the county clerk as sufficient to entitle these two men to an absentee ballot. At the recount the county board of elections similarly found that Johnson and Chandler were entitled to vote absentee. Testifying at the hearing in the Law Division Dr. Stokes amplified his certificates: Chandler was also suffering from cellulitis and possible osteomyelitis; Johnson was almost totally blind and suffered from hypertension and arteriosclerosis. He said that neither man could or should have gone to the polls.
We next consider the point raised by Moore in his petition to the Law Division  that, contrary to the statement contained in the acknowledgment, neither of the two voters exhibited his ballot to the notary public unmarked, and then marked it in the notary's presence and in the presence of no other person in such manner that his vote could not be seen, thereafter enclosing it in the envelope. We are satisfied that, in the circumstances, the exhibiting of a marked ballot by each of the voters to the notary as his own vote constituted an equal guarantee of trustworthiness and authenticity.
In reaching this conclusion we are influenced by several considerations. In the first place, aside from the mention of the text of the acknowledgment in N.J.S.A. 19:57-17 there is, as we have noted, no direction in the statute that this procedure be followed. Next, the wording of the acknowledgment would naturally be the concern of the notary, and not the voter, and there is no proof that the acknowledgment was read to Chandler or Johnson before either signed. Finally, and most important, are the printed instructions furnished to these two men and all other absentee voters. These instructions direct, merely, that the ballot is to be completed as soon as possible after receipt. The voter is instructed to mark the ballot, insert the completed ballot in the envelope, complete the certificate attached to the flap, *255 have his signature witnessed by a notary public, seal the envelope without detaching the certificate, and insert the envelope and mail it as soon as possible to the county board of elections. If the order of the instructions were carefully followed  as it was here  the law would be violated. The instructions made it impossible to exhibit the ballot, unmarked, to the notary.
The irregularity in the Sharrock case, above, was solely the act of the election officials, and so was the omission of the declarations in Wene. It would be naive to assert that the procedure followed before the notary was solely the act of Johnson and Chandler, both of them sick and disabled. Since absentee voting is a relatively unusual occurrence in a person's life, these two voters had a right to expect that correct instructions would be furnished them. It would be an abuse of our function if, in the setting of this case, we were to adopt a strict construction of the statute and so thwart good-faith efforts to follow the furnished instructions.
We turn to the question of whether the two absentee ballots were invalidated for failure to fill in completely the certificate attached to the flap of the inner envelope. We address ourselves specifically to the omission to check the box indicating that Johnson and Chandler were voting absentee because of physical disability, and to write in the address of the place where they were confined and the particular nature of their disability. In the case of Chandler, he also omitted to write in the word "Republican" on the affidavit appearing directly below the acknowledgment.
The attention of an absentee voter like Johnson or Chandler would naturally be drawn to that part of the certificate, reproduced above, which has heavy brackets on each side in the margin. It would also be entirely natural for them, or Mrs. Carra who helped them, to disregard the text that had been overprinted in dark silver ink. They reasonably could have concluded that this portion of the certificate had purposely been blotted out by the election officers and need not be filled in. The fault lay with those who prepared the *256 certificate form  not with Johnson or Chandler who, under the Sharrock and Wene cases, should not suffer a loss of their vote because of the act of the election officials.
In any case, what was supplied on the certificate fairly conveyed such information as might be essential to those passing upon the validity of the Johnson and Chandler ballots. The place of their confinement was indicated by the address given by each voter directly above the overprint. All information pertaining to the reason for absentee voting was reasonably supplied by the physician's certificate attached to the certificate form. The omission of the word "Republican" in Chandler's certificate is of only minor significance and is hardly a reason for invalidating his ballot.
Clearly underlying the decisions of our courts construing the Absentee Voting Law where there has been a deviation from the literal requirements of the act, is the policy of upholding the inviolability of the ballot when substantial compliance is found. Wene v. Meyner, above. We note, in passing, that where the Legislature intended that a noncompliance with the statutory requirements of the act should disenfranchise the voter, it specifically so provided. See, for example, N.J.S.A. 19:57-24 and 19:57-31.
We have observed that the Absentee Voting Law enjoins us to give it a liberal construction in order to effectuate its purpose. This policy was unequivocally adopted and applied in the Wene case, where the court said:
"* * * while protective legislation measures are to be enforced according to their spirit, a construction that would nullify votes cast by qualified primary electors is to be avoided unless that purpose be expressed in clear and unambiguous terms." (13 N.J., at page 193)
In view of our determination that the Johnson and Chandler ballots were wrongly declared invalid, we pass the question, raised by appellant Mayers, that the Law Division judge should not have considered irregularities not mentioned in the petition, absent fraud. The reference is to the judge *257 having, on his own motion, observed that the certificate had not completely been filled out, and so was void. Nor do we find it necessary to consider the further argument that since the irregularities here involved were not caused by the appellant, nor committed with his knowledge or consent, his nomination should not be invalidated.
The judgment is reversed. The county clerk is directed to include Mayer's name as the Republican nominee for township committeeman of the Township of Little Falls in the ballot at the forthcoming election.