78 N.J. Super. 349 (1963)
188 A.2d 607
IN THE MATTER OF THE APPLICATION OF FRANCIS R. FARLEY FOR A RE-CHECK AND RE-COUNT OF THE ABSENTEE BALLOTS AND VOTING MACHINES OF THE 9 ELECTION DISTRICTS OF THE BOROUGH OF NEW PROVIDENCE, COUNTY OF UNION, STATE OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1963.
Decided February 21, 1963.
*350 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Richard J. Traynor argued the cause for appellant Francis R. Farley.
*351 Mr. Jeremiah O'Dwyer argued the cause for respondent John C. Clay (Messrs. Dughi & Johnstone, attorneys).
Mr. Fred A. Lorentz appeared for the Borough of New Providence (Messrs. Lorentz & Stamler, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
At the end of a recount under N.J.S.A. 19:28-1 and a review under N.J.S.A. 19:29-1, a judge of the Superior Court declared that in the general election held November 6, 1962 Francis R. Farley and John C. Clay had received the same number of votes for mayor of the Borough of New Providence. Farley appeals.
Whether the judgment below is correct depends upon whether the judge properly rejected the absentee ballots voted by Mrs. Esther Shilling and Mrs. Beverly Zaccagnio and accepted those voted by C. Ernie Fischer and Florence Fischer, his wife. The Fischers voted for Clay; Mrs. Shilling and Mrs. Zaccagnio for Farley.
The ballots of Mrs. Shilling and Mrs. Zaccagnio were rejected because not accompanied by a physician's certificate as required by N.J.S.A. 19:57-18 (hereafter called physician's certificate).
Mrs. Shilling and Mrs. Zaccagnio applied for absentee ballots on mimeographed forms supplied to them for that purpose, prepared, we presume, by the county clerk. Cf. N.J.S.A. 19:57-4, 6 to 12. For reasons which shall appear hereafter, it is important to note that, oddly, the Election Law does not require the civilian applicant to furnish any proof that he is entitled to vote absentee, nor does it prescribe the form of application for a civilian ballot, even though it does for a military service ballot, N.J.S.A. 19:57-5. Indeed, a civilian may apply by letter and need not use the form prepared by the county clerk. Furthermore, although the county clerk is directed by section N.J.S.A. 19:57-16 to "send, with each absentee ballot, printed directions for the preparation and transmitting of absentee ballots," there is no requirement *352 that the county clerk send such directions to applicants for absentee ballots before he honors their applications and sends them the ballots.[1]
In answer to the question on the application, "Reason why absentee ballot is requested," Mrs. Shilling answered "confinement to home or hospital due to birth of baby." Her baby was born October 18. Mrs. Zaccagnio answered the same question, "I expect a baby October 30, 1962 and will be unable to go out on election day." Her baby was born October 29.
On the margin of the flap on the inner envelope of the absentee ballots, the county clerk had caused to be printed a certificate (hereafter called the flap certificate) which was meant to comply with N.J.S.A. 19:57-17.[2] That portion of the flap certificate material to the decision of this case was *353 filled out by Mrs. Shilling on November 2 as follows, all of it being printed except the italicized portions:
"[] I am unable to leave my place of confinement at 4 Lavina Court, Summit, N.J. because of giving birth to baby on October 18, 1962 and will, therefore, be unable to cast my ballot at the polling place in my election district on the date of election. (In the case of any civilian absentee voter who claims the right to vote by absentee ballot by reason of disability, the voter shall include within the outer envelope a certificate of a duly licensed physician or a duly accredited Christian Science practitioner certifying that the voter is confined by reason of sickness or physical disability and will be unable to cast his ballot at the polling place in the absentee voter's election district on the date of the election.)"
*354 That part of the above excerpt from the flap certificate which is contained in parentheses is not to be found in N.J.S.A. 19:57-17. It was apparently composed by the county clerk under the authority of N.J.S.A. 19:57-16 and 18.[3]
As we have said, the statute does not require the county clerk to give instructions to applicants for absentee ballots. It is, of course, commendable when he does so. Unfortunately, the instructions that were here given with the application forms supplied by the county clerk were misleading, as we shall see, to applicants such as Mrs. Shilling, who were disabled when they applied for absentee ballots but who recovered sufficiently to be able to go to the polls on election day.
The instructions on the application forms were identical with those in the parentheses mentioned above, as follows (emphasis ours):
"Instructions for Preparation and Transmitting of an Absentee Ballot
In the case of any civilian absentee voter who claims the right to vote by absentee ballot by reason of disability, the voter shall include within the outer envelope a certificate of a duly licensed physician or a duly accredited Christian Science practitioner certifying that the voter is confined by reason of sickness or physical disability and will be unable to cast his ballot at the polling place in the absentee voter's election district on the date of the election * * *."
Mrs. Zaccagnio filled out the flap certificate on her ballot as follows, on November 2:

*355 "[] I am unable to leave my place of confinement at 7 Lavina Court, New Providence because of Maternity and will, therefore, be unable to cast my ballot at the polling place in my election district on the date of election, * * *." (Mrs. Zaccagnio's insertions italicized.)
Farley contends it was error to reject the ballots of Mrs. Shilling and Mrs. Zaccagnio for failing to enclose the physician's certificate described in N.J.S.A. 19:57-18. He argues that no physician's certificate is required in case of pregnancy, reasoning thus: prior to 1960 pregnancy did not entitle a woman to vote by absentee ballot; the words "including pregnancy" were added to N.J.S.A. 19:57-2 by L. 1960, c. 140; N.J.S.A. 19:57-18 has required a doctor's certificate from those claiming "sickness or physical disability" since the law was adopted in 1953, but was not amended to add the words "including pregnancy"; ergo, the Legislature did not intend to require a doctor's certificate in case of pregnancy.
The fallacy in this argument is that the Legislature did not make pregnancy per se an independent ground for absentee voting. Not all pregnant women are entitled to vote by absentee ballot, but only those who because of their pregnancy will be unable to cast their ballots at the polling place on election day. It seems to us that L. 1960, c. 140, amended N.J.S.A. 19:57-2, the definition section of the act, only to make it clear that "physical disability" included physical disability due to pregnancy. Cf. N.J.S.A. 43:21-29; N.J.S.A. 43:21-4; New Jersey Bell Telephone Co. v. Board of Review, 78 N.J. Super. 144 (App. Div. 1963); Medwick v. Bd. of Review, 69 N.J. Super. 338 (App. Div. 1961); Carter v. Howard, 160 Or. 507, 86 P.2d 451, 455 (Sup. Ct. 1939); Lee v. Metropolitan Life Ins. Co., 180 S.C. 475, 186 S.E. 376, 382 (Sup. Ct. 1936).
It is to be noted that N.J.S.A. 19:57-3, which specifies the "[p]ersons entitled to vote by absentee ballot," also was not amended when L. 1960, c. 140 was adopted. It seems plain to us that the Legislature felt there was no need to repeat *356 "including pregnancy" in the remaining sections of the Absentee Voting Act, after N.J.S.A. 19:57-2 was amended to define disability as "including pregnancy." Therefore, we hold that the doctor's certificate described in N.J.S.A. 19:57-18 must be furnished in cases of disability due to pregnancy.
This brings us to the next question  is the failure to include the doctor's certificate fatal to the validity of these two ballots? Farley argues that the ballots should be counted because the ballots and accompanying instructions were ambiguous through the fault of the statute and the election officials, and the women in good faith did what they reasonably understood was required.
To assay this argument we must first turn to the statute. Two things strike us immediately. First, N.J.S.A. 19:57-3 expressly provides that the Absentee Ballot Law "shall be liberally construed" to enable eligible absentees to vote. Second, N.J.S.A. 19:57-28 provides that no person who has obtained an absentee ballot may vote in person on the day of the election, "but such person may execute such ballot in the manner provided by this act even though he is in the State on the day of the election."
It may be argued that N.J.S.A. 19:57-28 intended that only one who obtained an absentee ballot because he expected to be out of the state, but found himself at home on election day, could nevertheless vote the absentee ballot. We reject this construction because it would disenfranchise those who expected to be at school in New Jersey but were at home instead, and those who honestly expected to be confined on election day because of sickness or physical disability but who recovered. It is to be noted that N.J.S.A. 19:57-28 has been in the act since it was originally adopted in 1953, and the statute even then gave the right to vote absentee to anyone who "because of illness or physical disability will be unable to cast his ballot at the polling place * * *." L. 1953, c. 211, § 2, p. 1579.
*357 N.J.S.A. 19:57-7 provides that notice to those desiring absentee ballots shall be published at least 40 days prior to the election, and N.J.S.A. 19:57-11 provides that the absentee ballot shall be forwarded to the applicant "as soon as practicable after the twenty-fifth day preceding * * *" the election. It is obvious, therefore, that one might in good faith apply for and receive an absentee ballot long before election day because the applicant expected to be absent from the State on election day, or in resident attendance at a school within the State, or confined because of illness or physical disability, and yet on election day might be in the State, or home from school, or no longer confined because of illness or physical disability. This might happen, for example, if an applicant, confined because of illness, unexpectedly recovered sufficiently to leave the house, or it was discovered the diagnosis which caused confinement was erroneous, or an expected operation was delayed until after the election, or a pregnant applicant suffered a miscarriage or premature delivery.
These possibilities demonstrate that the requirements of N.J.S.A. 19:57-17 and 57-18 are not to be taken literally. N.J.S.A. 19:57-17 purports to set forth the wording of the certificate which is to be printed on the margin of the "flap on the inner envelopes to be sent to civilian absentee ballot voters * * *," and which must be completed, signed and sworn to by the voter. The voter who obtains an absentee ballot in good faith, for reasons which no longer exist when he votes the ballot, can not complete and swear to the literal words of the flap certificate as set forth in N.J.S.A. 19:57-17 without committing the crime of false swearing.
For example, the voter who was out of the State but has returned must swear, according to the literal terms of the flap certificate as set forth in said section (emphasis ours):
"My reason for voting this absentee ballot is:
[] I will be absent from the State on the date of the election."
Likewise, the voter who expected to be in school but is home must swear:

*358 "[] I will be unable to attend at my polling place on the date of the election because I will be in resident attendance at (name of school)."
And the voter who was and is no longer confined because of sickness or physical disability, including pregnancy, must swear:
"[] I am unable to leave my place of confinement * * * and will, therefore, be unable to cast my ballot at the polling place * * *."
Obviously the Legislature did not intend that the voters swear falsely. The Legislature undoubtedly contemplated that the wording of the flap certificate may and should be altered by the voter so that it speaks the truth about him as of the date he swears to it. Cf. In re Moore, 57 N.J. Super. 244, 255 (App. Div. 1959). From this it follows that the wording of the flap certificate as set forth in N.J.S.A. 19:57-17 is only directory. N.J.S.A. 19:57-17 means that there must be a certificate substantially in the form set forth in that section, but it may be amended whenever necessary to state the truth. In re Moore, supra.
Thus, the voter who was abroad but who has returned would alter the words of the certificate to say:
"[] I expected to be absent from the State on the date of the election."
or words to that effect; and other civilian absentees would alter the flap certificate in corresponding fashion whenever necessary to accord with the truth.
For the same reasons, the voter who was but is no longer confined by reason of physical disability need not, because he cannot, comply literally with N.J.S.A. 19:57-18. That section requires the voter to obtain a doctor's certificate "that the voter is confined by reason of sickness or physical disability and will be unable to cast his ballot at the polling place * * * on the date of the election." (Emphasis ours.)
*359 We hold that the intent of the statute is that the physically recovered voter should furnish a doctor's certificate that when he obtained the absentee ballot he was confined because of physical disability and the doctor then thought he would be unable to cast his ballot at the polling place on election day. However, that is not expressly stated in the statute, the flap certificate or the instructions, or is there even a suggestion that it would be acceptable. The person who had been but was no longer confined had the right to read the instructions, the flap certificate and the statute literally. He had the right to assume that, since he could not furnish the doctor's certificate described in the unequivocal words set forth in N.J.S.A. 19:57-18, and must vote his absentee ballot if he was to vote at all, he was not required to furnish any doctor's certificate at all. Cf. In re Moore, supra.
We hold that when the doctor's certificate is not enclosed with the ballot of the physically recovered voter who obtained it because of physical disability, the voter should explain on the flap certificate why no doctor's certificate is enclosed. For example, the voter might then change the language of the flap certificate somewhat as follows:
"[] I was unable to leave my place of confinement * * * because of (name of sickness or physical disability) and expected, therefore, to be unable to cast my ballot at the polling place, but I am no longer confined."
But, as we have seen, the statute does not say so, and no such instructions were given to the voters. They were not told what to do about the doctor's certificate or the flap certificate if they were no longer confined because of disability. On the contrary, the instructions which were given, and the flap certificates, adhered to the letter of the statute. The instructions and the flap certificate may have been clear to those whose condition was unchanged since the time when they applied for the ballot, but they were necessarily bewildering to those who had been but were no longer disabled.
We must point out that, according to the record before us, no witness appeared in the trial court except the chief clerk of *360 the Union County Board of Elections. What we state as the facts, including the dates of birth, we have gleaned, as apparently undisputed, from the documents and the presentations by counsel.
There is no contention that Mrs. Shilling did not make her application for the absentee ballot in good faith. The baby having been born on October 18, and there being no evidence or contention to the contrary, we conclude she was physically able to go to the polls on November 6. Hence, for the reasons which we have given, she was not required to furnish the doctor's certificate or to amend the flap certificate, and her vote should have been counted.
Since Mrs. Shilling's vote breaks the tie, we deem it not necessary to consider Mrs. Zaccagnio's vote or the votes of Mr. & Mrs. Fischer. Judge Conford argues persuasively that Mrs. Zaccagnio's vote also is valid, for reasons which he will state in a concurring opinion. However, since Mrs. Zaccagnio's baby was born October 29, we prefer not to express any opinion as to the validity of her vote.
In the case of In re General Election in Bethlehem Tp., 74 N.J. Super. 448, 465 (App. Div. 1962), we dealt with ballots attacked for exactly the same reasons as the Fischer ballots are here attacked, and we held that there was "no reason for invalidating the absentee ballots. The certificates were otherwise complete, including the voter's name, reason for absence, and the notary's certificate." True, we added that "even were we to consider these certificates invalid on the narrow, technical ground advanced by the opposing candidate, the result of the election would not be changed"; but that is also the situation here. The elimination of the Fischer votes would only make Farley's margin that much larger.
We hold, therefore, that Farley has been elected. The case is remanded to the Superior Court, Union County, for such further proceedings as may be necessary to place him in office. No costs.
We hope it will be helpful to observe that it is plain, in the light of both opinions in this case, that the civilian absentee *361 statute should be revised so that the procedure and mechanics of the act may be simplified and harmonized with its salutary purpose and object and thus eliminate the hazard of miscarriage of the exercise of the franchise in absentee voting. Among other things, perhaps it would be well to provide that the proof of the right to a civilian absentee ballot, such as must now be furnished in the flap and physician's certificates, be submitted by the voter with the application for the ballot rather than with the ballot itself.
CONFORD, S.J.A.D. (concurring).
I agree that Farley has been elected. As I view the facts and the law, however, the ballots of both Mrs. Shilling and Mrs. Zaccagnio should have been counted. My analysis of the election statute as applied to these facts differs somewhat from that of the majority.
By L. 1960, c. 140, amending N.J.S.A. 19:57-2, the Legislature expressly included pregnancy of a voter as within the category of "illness or physical disability" anticipatorily disabling her from voting in person on election day, which would warrant permitting her to vote by civilian absentee ballot. This could reasonably contemplate two types of disability in such case: (a) illness attendant upon pregnancy itself which sometimes accompanies that condition, or (b) the disability and confinement ordinarily attendant upon childbirth for a variable but usually short period thereafter. It is the second category which was most probably in the legislative mind when writing pregnancy into the statute. It needed no amendment of the statute to cover in the first, as the unqualified term "illness or physical disability" would unquestionably apply to any illness, including that attendant upon pregnancy per se. What the Legislature primarily had in mind, undoubtedly, in expressly including pregnancy, was the situation where a voter is pregnant and expects to give birth so soon before election day that she reasonably fears inability to vote in person at the polling place on election day because of confinement from childbirth.
*362 By the statutory amendment in question, therefore, the Legislature clearly invited pregnant women like Mrs. Shilling and Mrs. Zaccagnio, who reasonably expected to be confined and unable to vote at the polling place because of prospective childbirth, to apply in advance for civilian absentee ballots while pregnant and thereupon to become absolutely entitled to vote in that manner, since the act prohibits the grantee of an absentee ballot from voting in person at the polling place (N.J.S.A. 19:57-27). In the case of applicants for absentee ballots of the stated description, it is impossible reasonably to impute to the Legislature an intention to require enclosure with the executed ballots of the form of physician's certificate described in N.J.S.A. 19:57-18. Having invited women pregnant but not yet confined to apply for such ballots, it cannot be supposed the Legislature was expecting such applicants to gamble with their right to vote by forcing them to accept a condition subsequent which very likely could not be fulfilled in the ordinary course of events. Since the pregnant voter would be justified and even expected to return the executed ballot forthwith, even though still pregnant and unconfined, she obviously would be unable to get any physician to certify at that time, as the statutory provision literally requires, that she was then confined by any disability, or even, necessarily, that she would be unable to vote at the polling place on election day, as also literally required to be certified. The precious right of a citizen to cast his ballot cannot be frustrated by technical difficulties over election law or administration where the voter is qualified and attempting to exercise his franchise in good faith. See Wene v. Meyner, 13 N.J. 185 (1953). Nor should a voter have to engage counsel to advise him how to vote by absentee ballot. The Legislature did not invite pregnant women to vote absentee with the welcoming gesture of one hand while concealing a nullifying blackball in the other.
In my judgment, the physician's certificate can reasonably be deemed to have been intended to be required only where the voter, when applying for the absentee ballot, and thereby *363 irrevocably committing himself to vote only in that manner, is then, in the bona fide judgment of a physician, confined and in such physical condition as will expectably cause the confinement to continue through election day.
As I rationalize the statutory scheme, the die is cast at the time when the voter applies for the absentee ballot on grounds of illness or disability, because once the ballot is sent him it becomes his exclusive method of voting. If, therefore, his or her condition at that time meets the legislative contemplation for absentee voters, a subsequent change in that condition before election day cannot deprive him of the right to vote in that manner. Specifically, in the case of the pregnant applicant, the contingency that by the time she receives and sends in the absentee ballot she has given birth and may not be able to get a physician to certify both that she is then confined and will not be able to vote at the polling place on election day cannot affect her right to send in the ballot and have it counted. (A fortiori, the pregnant bona fide applicant who does not give birth until after the election cannot be deprived of her vote because she cannot obtain a physician's certificate as to either of the statutory criteria.)
If the foregoing principles be accepted, it is illogical to say that in the case of a pregnant applicant it is intended that she must provide the physician's certificate if at the time she sends in the ballot the facts fortuitously are such that she can obtain such a certificate. A meaningless procedure is not to be presumed intended. If, as a matter of construction of the remainder of the act, a bona fide application for an absentee ballot by a qualified pregnant voter is conclusive of her right to vote in that manner (once the ballot is sent her), regardless of the timing or incidence of subsequent changes in physical condition or confinement, it would be pointless to require filing of the physician's certificate merely because it could honestly be made, since, ex hypothesi, the facts thus certified (or any negation thereof inferable from a failure to file) are immaterial to the right to cast the ballot. It is therefore clearly to be presumed that the Legislature did not intend *364 the certificate to be filed in such case. In any event, there is at least enough doubt that it did so intend, to preclude nullifying honestly cast ballots on the assumption thereof. The omission of the certificate would at most be a defect of form, not substance, and therefore not fatal.
There is absolutely no question that Mrs. Zaccagnio was still pregnant when she applied for her absentee ballot. The validity of her ballot is therefore fully within the foregoing rationale. There is some doubt in the case of Mrs. Shilling. The only facts of record as to her are that her request for a ballot was stamped as received in the county clerk's office October 19, 1962, whereas she gave birth October 18, 1962. It would seem dubious, though possible, that she would have filled out and sent in an application after giving birth on the 18th which would have been received in the clerk's office by the 19th. A doubtful factual issue should be resolved in favor of rather than against the validity of an otherwise unexceptionable attempt to exercise the franchise, absent fraud or kindred illegality. I would therefore on this record find Mrs. Shilling to have applied for an absentee ballot before she gave birth, i.e., when pregnant, and her executed ballot therefore to be valid without the certificate.
In order to round out my whole analysis, I should say that I would agree that if Mrs. Shilling had in fact given birth before applying for the absentee ballot, her only justification for requesting it would be, as explained above, her then existing confinement and a reasonable expectation that it would continue through election day. In such case the requirement for supplying a physician's certificate must be complied with (if the certificate can be obtained). In that situation the legislative requirement of a certificate obviously serves the prophylactic purpose of tending to obviate misuse of the absentee ballot procedure by those not ill or confined but who would like to vote in that manner under pretense thereof.
NOTES
[1] N.J.S.A. 19:57-16 provides:

"Each county clerk shall send, with each absentee ballot, printed directions for the preparation and transmitting of absentee ballots as required by this act (which may be printed upon the inner envelope) together with two envelopes of such sizes that one will contain the other.
The outer envelope shall be addressed to the county board of elections of the county in which is located the home address of the person to whom the absentee ballot is sent, as certified by the county clerk.
The inner envelope shall be so designed that it can be sealed after the absentee ballot has been placed therein and the flap thereof shall be of such length and size as to leave sufficient margin, after sealing, for the printing thereon of the certificate hereinafter described. The flap shall be so arranged, that the margin containing the certificate can be so folded, after the inner envelope has been sealed, that the certificate can be contained, with the said inner envelope, in the outer envelope, and that the margin containing the certificate can be detached without unsealing the inner envelope. * * *"
[2] N.J.S.A. 19:57-17 provides:

"Upon said margin of said flap on the inner envelopes to be sent to civilian absentee voters there shall be printed a certificate in the following form:
* * * * * * * *
Place a cross (X) in the box preceding the applicable statement below. * * *
[] I will be absent from the State on the date of the election.
 [] I am unable to leave my place of confinement at ______________
 _________________________________________________________________
 (home address, hospital address or other place of confinement)
 because of ____________________________________________ and will,
 (name of sickness or physical disability)
 therefore, be unable to cast my ballot at the polling place in my
 election district on the date of the election.
[] I will be unable to attend at my polling place on the date of the election because of the observance of a religious holiday, pursuant to the tenets of my religion.
 [] I will be unable to attend at my polling place on the date of
 the election because I will be in resident attendance at _______
 __________________________________________ located in __________
 (name of school, college or university) (name of
 _____________, New Jersey.
 city or town)
I marked the enclosed ballot in secret.
 __________________________________________
 (signature of absentee voter)
 __________________________________________
 (print your name clearly above)
 State of ____________________]
 County of ___________________] ss.
 Country of __________________]
_______________________________ being duly sworn, deposes and says that the statements on the foregoing delcaration are true.
 __________________________________________
 (signature of absentee voter)"
Then follows the jurat.
The certificate here was substantially the same as that reproduced in In re Moore, 57 N.J. Super. 244, 249 (App. Div. 1959).
[3] N.J.S.A. 19:57-18 provides:

"In the case of any civilian absentee voter who claims the right to vote by absentee ballot by reason of disability, the voter shall include within the outer envelope a certificate of a duly licensed physician or a duly accredited Christian Science practitioner certifying that the voter is confined by reason of sickness or physical disability and will be unable to cast his ballot at the polling place in the absentee voter's election district on the date of the election. * * * Appropriate instructions in this regard shall be included in the printed directions for the preparation and transmitting of absentee ballots."