121 N.J. Super. 430 (1972)
297 A.2d 594
AILEEN CAVANAGH AND DAVID RAMSEY, PLAINTIFFS,
v.
MORRIS COUNTY DEMOCRATIC COMMITTEE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 1, 1972.
*432 Mr. Philip S. Carchman for plaintiffs, (Messrs. Carchman, Sochor & Carchman, attorneys).
Mr. Salem Vincent Ahto for defendant (Messrs. Taigman and Ahto, attorneys).
STAMLER, J.S.C.
This is an action of novel impression for a declaratory judgment brought by plaintiffs as representatives of a class comprised of all registered members of the Democratic Party of Morris County eligible to vote in Democratic primary elections and all persons eligible for nomination for candidacy to elective office. Defendant is the Morris County Democratic Committee. The relief sought, to be determined on cross-motions for summary judgment, concerns a by-law adopted by defendant which establishes a candidate screening committee alleged by plaintiff to be in violation of N.J.S.A. 19:34-52.
*433 The court determined that a proper resolution of the issue presented necessitated a review of the constitutionality of N.J.S.A. 19:34-52. The Attorney General of the State of New Jersey, refusing to enter the action on his own initiative, was made a party-defendant, the amended complaint alleging he was empowered by law to enforce the provisions of Title 19 of the Revised Statutes (N.J.S.A. 19:1-1 et seq). A motion by the Attorney General to dismiss the complaint as to him was denied by this court. On interlocutory appeal the Appellate Division reversed (Docket A-1573-71, March 16, 1972), stating that no claim for relief was made against the Attorney General and that no challenge was directed to the constitutionality of the statute. Accordingly, this court will not consider the constitutionality of N.J.S.A. 19:34-52.
To require defendant to operate under the proposed by-law before plaintiffs can test the validity of the action would tarnish the candidate and perhaps even upset the results of a primary election. The matter, therefore, is ripe for declaratory interpretation. N.J.S.A. 2A:16-50 et seq.
The following facts were stipulated to by the parties:
Plaintiffs AILEEN CAVANAGH and DAVID RAMSEY are residents and taxpayers of the Borough of Chatham and County of Morris. They are registered members of the Democratic Party as such is defined and established pursuant to N.J.S.A. 19:23-45.
Plaintiffs bring this action on their own behalf and on behalf of other persons similarly situated pursuant to R. 4:32-1, et seq. The class which plaintiffs represent is composed of all registered Democrats in the County of Morris who are eligible to vote in Democratic primary elections and all persons woh are eligible for nomination for candidacy to elective office. The rights of the plaintiffs and the class they represent will be in the future affected by the action of the defendant, MORRIS COUNTY DEMOCRATIC COMMITTEE. These persons are so numerous that the joinder of all members of the class is impracticable. There are questions of law and fact common to the class. The claims of the representative parties are typical of the claims of the class. The representative parties will fairly and adequately represent the interests of the class. An adjudication with respect to the representative plaintiffs would, as a practical matter, be dispositive of the other interests of the class not herein named who are not parties to this action.
*434 Defendant, MORRIS COUNTY DEMOCRATIC COMMITTEE, is a statutorily created body established pursuant to the provisions of N.J.S.A. 19:5-3 consisting of members chosen pursuant to the statutory authority as aforesaid and is a county committee within the language, meaning, and intent of the statutory authority as aforesaid.
Pursuant to the provisions of N.J.S.A. 19:5-3, the defendant, MORRIS COUNTY DEMOCRATIC COMMITTEE, has authority and power to adopt a constitution and by-laws for its proper government.
On or about March 31, 1970, the defendant, MORRIS COUNTY DEMOCRATIC COMMITTEE, adopted revised by-laws including a provision which states in part:

ARTICLE 5. CANDIDATE SCREENING COMMITTEE
A candidate Screening Committee shall be established consisting of representatives from each municipality, Democratic officials who hold office won in a General Election in all or any part of Morris County and the Executive Committee. Advance public notice shall be made of all meetings of the Screening Committee and they shall be open for public participation.
Each member of the Screening Committee shall have one vote on all matters except on the endorsement of candidates. On endorsement of candidates each member shall have one vote except the municipal representatives who shall share equally among them votes equal to the number of members of the organization residing in their municipality. The municipal chairman shall be a representative from each municipality. In municipalities with more than sixteen votes the municipal committee shall elect the minimum number of additional representatives needed to insure that no representative from that municipality is allotted more than sixteen votes.
The names of all members of the Screening Committee, together with the units they represent and the votes they are authorized to cast for endorsement shall be available to all members of the County Committee.
The Screening Committee shall meet at the call of the Chairman of the organization or upon petition of those of its members sufficient to form a quorum.
A quorum of the Screening Committee shall exist when the members who are present are authorized to cast one-fifth of the votes which could be cast on a motion for endorsement of a candidate.
The Screening Committee members shall bear all expenses for their meeting to conform with New Jersey Election Law.

ARTICLE 12. ADOPTION
These by-laws shall be effective upon approval by a simple majority of those present.
It is the expressed intention of the MORRIS COUNTY DEMOCRATIC COMMITTEE to utilize the "Screening Committee" in the screening and endorsement of candidates for public office prior to primary elections.
*435 Article 5 of the by-laws of the Democratic Committee creates a screening committee for the purpose of evaluating and endorsing candidates prior to primary elections. Plaintiffs allege this is in violation of N.J.S.A. 19:34-52, which reads:
No state, county or municipal committee of any political party shall prior to any primary election indorse the candidacy of any candidate for a party nomination or position.
Defendant takes the position that the screening committee is not a committee within the intended meaning of the statute. It alleges without any argument or support of legislative history or legal precedent that N.J.S.A. 19:34-52 is "only applicable to the county democratic committee and not to a committee thereof." This position is untenable. The Morris County Democratic Committee does not have the authority to create a committee independent from itself. N.J.S.A. 19:5-3, which provides for the organization of county committees, gives "Such committee * * * power to adopt a constitution and by-laws for its proper government." (Emphasis added). Any special committee established by defendant must be considered a part of the Democratic Committee. Since the screening committee is an open arm of the county committee, it would completely circumvent the legislative prohibition in N.J.S.A. 19:34-52 to say that the statute only applied to the parent committee but not to a "committee thereof." If defendant's contention were true, then any state, county or municipal political committee could evade any regulatory provision it wished by establishing a subcommittee. For example, if a county committee desired to provide financial support for a primary candidate, an act strictly prohibited by N.J.S.A. 19:34-33, it could do so by creating a finance committee and avow its independence. A decision in compliance with defendant's position would render many electoral regulating provisions meaningless.
*436 The equitable maxim that equity looks to substance rather than form dictates that the screening committee not be considered immune from the enforcement of N.J.S.A. 19:34-52. Article 5 of the by-laws states that the screening committee shall consist of "representatives from each municipality, Democratic officials who hold office won in a General Election in all or any part of Morris County, and the Executive Committee." Presumably the "Executive Committee" is the executive committee of the Morris County Democratic Committee. A comparison of the composition of the screening committee with that of the Democratic Committee demonstrates that the screening committee is really the alter ego of defendant. Both consist of municipal representatives and both contain the "executive committee" of the county committee. The label which defendant gives to a transaction does not determine its character. 405 Monroe Corp. v. Asbury Park, 70 N.J. Super. 293 (App. Div. 1961), rev'd on other grounds, 40 N.J. 457 (1963). The true test for evaluation of a transaction, in this instance the formation of a candidate screening committee, is the real purpose of the County Democratic Committee. Brodzinsky v. Pulek, 75 N.J. Super. 40 (App. Div. 1962), certif. den. 38 N.J. 304 (1962). A court of equity should implement the substance over form approach "to effectuate the underlying policy of the statute, which is regulatory in nature." Kleinberg v. Schwartz, 87 N.J. Super. 216, 222 (App. Div. 1965), aff'd 46 N.J. 2 (1965).
In the present case the aim of the statute is to prevent interference by the county committee with the candidacies of persons running for party nomination. The screening committee vitiates this purpose.
The county committee has an obvious interest in which persons receive the nomination of the county party. To think otherwise would be naive. To effectuate this interest a screening committee was established with the purpose of endorsing candidates prior to the primary election. The language of N.J.S.A. 19:34-52 clearly prohibits such activity. *437 This statute cannot be given any other meaning. In interpreting statutory words, they are to be given their common usage. Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494 (1950). This rule of construction was reiterated more explicitly in Fiscella v. Nulton, 22 N.J. Super. 367 (App. Div. 1952):
If the legislative intendment is clear and unambiguous, the court will not "* * * indulge in a presumption, arising from extrinsic evidence, that the Legislature intended something other than what it actually expressed." Bass v. Allen Home Improvement Co., 8 N.J. 219 (1951). "A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided. * * *"
See, In re Keogh-Dwyer, 106 N.J. Super. 567, 571 (Law Div. 1969), aff'd 54 N.J. 523 (1969).
Election statutes are to be tested like all other statutes, but with a leaning to liberality in view of the great public purposes for which they are intended. Sharrock v. Keansburg, 15 N.J. Super. 11 (App. Div. 1951); see In re Ross Petition, 116 N.J. Super. 178 (App. Div. 1971). "One of these purposes is to purify the politics of the State by preventing fraud and wrongdoing in the nominating procedure." Sadloch v. Allan, 25 N.J. 118, 129 (1957). This legislative purpose is supported by past experience with the primary process. At one time party conventions provided the party nominees. However, because of public dissatisfaction with the political manipulation at conventions, primaries have replaced the convention procedure. See Ray v. Blair, 343 U.S. 214 (1952). The major reason for changing to the primary election is to prevent political manipulation by certain select members of the party. In New Jersey, the first election law was not passed until 1878. In 1903 a comprehensive law (L. 1903, c. 248), was enacted which established a new state policy of having fully regulated primaries. Stevenson v. Gilfert, 13 N.J. 496 (1953). As stated by Justice Jacobs:
The act contained numerous other regulatory provisions which need not be detailed here. They represented full legislative recognition *438 that primary elections were no longer matters of private concern to be dealt with by party managers in any manner they chose but, on the contrary, were of public concern and required regulation in the public interest." [at 500; emphasis added]
See Wene v. Meyner, 13 N.J. 185 (1953).
The Legislature, by preventing party committees from exerting their influence on the party membership, is safeguarding the right of individual voter participation in choice of party candidates. The selection of candidates is to be by primary vote and not by the committee. Rogers v. State Committee of Republican Party, 96 N.J. Super. 265 (Law Div. 1967). The courts therefore "refrain from an indulgence in any judicial action that refashions legislation regulating and facilitating the conduct of elections and which is calculated to secure the right of suffrage and the free expression of the choice of the voter." Sharrock v. Keansburg, supra, 15 N.J. Super. 11, at 16.
There is no question but that primary elections are so far matters of public concern that they are proper objects of legislative control and that appropriate measures may be enacted. Nagler v. Stiles, 343 F. Supp. 415 (D.N.J. 1972); Briscoe v. Kusper, 435 F.2d 1046 (7 Cir.1970); see Sadloch v. Allan, supra; Wene v. Meyner, supra. The use of the police power by the State, subject to constitutional limitations, may be extended for the public good to constrain activity that is natural and otherwise right. Hopper v. Stack, 69 N.J.L. 562 (N.J. 1903). Regulation of the nominating process that produces candidates for public office is certainly a reasonable area of legislative involvement.
For the reasons stated above it is hereby declared that defendant Morris County Democratic Party's by-law creating a screening committee for the purpose of endorsing candidates for primary elections is in violation of N.J.S.A. 19:34-52 and therefore invalid. Defendant is permanently enjoined from organizing a candidate screening committee or any committee with the above stated purpose.
No costs.