# **RECORD IMPOUNDED**

## **NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4774-17T3

V.M.,

      Plaintiff-Respondent,

v.

S.G.,

      Defendant-Appellant.

_____

Argued July 16, 2019 – Decided August 1, 2019

Before Judges Vernoia and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-2187-17.

Michael B. Roberts argued the cause for appellant (Roberts & Teeter, LLC, attorneys; Michael B. Roberts, on the briefs).

Irene M. Hurtado argued the cause for respondent (McCarter & English, LLP, and Partners for Women and Justice, attorneys; Lisa Nichole Roskos, of counsel; Irene M. Hurtado and Kelly J. Garrone, on the brief).

PER CURIAM

Defendant S.G. appeals from a May 9, 2018 final protective order (FPO) issued to plaintiff V.M. pursuant to the Sexual Assault Survivor Protection Act of 2015 (SASPA), N.J.S.A. 2C:14-13 to -21. We affirm.

Plaintiff obtained a temporary protective order (TPO) on June 28, 2017. In support of the TPO, plaintiff alleged defendant, the pastor at the church where she worshipped and worked for eleven years, committed acts of nonconsensual sexual contact and lewdness on August 19, 2016.

According to the TPO complaint, defendant called plaintiff into his church office on the pretext of discussing church business.[1] When she went to leave the office, defendant came around to the front of his desk and asked plaintiff for a hug. Plaintiff declined but defendant proceeded to hug her. Defendant then grabbed plaintiff from behind and pushed her against the wall. According to plaintiff, defendant put his hand under her skirt. Defendant also touched plaintiff's breast and buttock, and kissed her neck. While plaintiff forcibly fought against defendant, he started moving his genital area against her and plaintiff observed defendant's pants were wet as a result of his arousal

---

[1] Plaintiff held various leadership positions in the church and discussed church business with defendant, in person, by telephone, and by text message, several times a week.

and ejaculation. During the incident, defendant asked, "[w]hy can't I have you? Please." Plaintiff fled defendant's office.

Defendant attempted to contact plaintiff to apologize for his behavior and asked plaintiff not to tell anyone about the incident. Plaintiff blocked defendant's phone number, and defendant persisted in his efforts by contacting plaintiff's mother and plaintiff's best friend.

Plaintiff filed a criminal complaint against defendant in municipal court, alleging sexual assault and harassment. The municipal court advised that plaintiff could apply for a TPO under SASPA as long as she was not eligible for a restraining order pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.

Because plaintiff asserted she had no dating or other qualifying relationship with defendant to obtain protection under the PDVA, she applied for and received a TPO. The TPO barred defendant from plaintiff's residence, school, the residence of plaintiff's family members, and the church.[2] In addition, defendant was barred from contacting plaintiff, her mother, and plaintiff's best friend.

---

[2] Defendant asked the court to remove the provision in the TPO barring him from the church. Defendant's request was denied on August 1, 2017. In violation of the TPO, defendant entered the church on September 22, 2017.

A-4774-17T3

The FPO hearings spanned five days. The final hearing was held on April 10, 2018. The family part judge heard testimony from plaintiff, plaintiff's mother, plaintiff's best friend, defendant, defendant's wife, and two additional defense witness. On May 9, 2018, the judge issued a written decision, finding the parties were not in a dating relationship and therefore SASPA applied. The judge entered an FPO in favor of plaintiff.

Having assessed the credibility of the witnesses, the judge determined plaintiff and her witnesses testified more credibly than defendant and his witnesses. The judge concluded there was no dating relationship between the parties. Plaintiff considered defendant to be a father figure and mentor. Plaintiff disavowed any romantic interest in defendant, who was sixteen years older than plaintiff. Despite vigorous cross-examination by defense counsel, plaintiff maintained she had no relationship with defendant beyond church member and pastor.

The judge found that although plaintiff's mother and best friend could have been biased in favor of plaintiff, they testified candidly and honestly. Plaintiff's mother testified defendant asked for forgiveness and explained he was at fault because he "was taken in by the flesh." Plaintiff's best friend

A-4774-17T3

testified she discovered the inappropriate text messages from defendant to plaintiff and confronted defendant regarding his improper behavior.

Regarding defendant and his witnesses, the judge determined they were not credible. The judge concluded defendant's witnesses were evasive in responding to questions. In their efforts to protect defendant and his reputation, the defense witnesses contradicted defendant's own testimony. For example, the witnesses denied plaintiff was alone with defendant in his room during a retreat despite defendant admitting he was alone with plaintiff. The judge found the defense witnesses were biased based on their steadfast belief in defendant's truthfulness as their spiritual leader and pastor.

In addition, the judge found defendant's wife was not credible. During her testimony, defendant's wife blamed plaintiff for defendant's conduct. The judge concluded the testimony proffered by defendant's wife was "staged, not sincere, contrived and certainly not credible."

In reviewing defendant's testimony, the judge noted his testimony "was evasive and disjointed." Defendant's responses to questions on direct and cross-examination were not responsive. Further, defendant attempted to justify his actions, testifying his "flesh overcame" him.

 A-4774-17T3

Relying on plaintiff's credible testimony regarding defendant's conduct in his church office on the date of the incident, and defendant's failure to deny having sexual contact with plaintiff, the judge found defendant committed a predicate act of nonconsensual sexual contact. N.J.S.A. 2C:14-16(a)(1). In addition, because defendant did not "deny ejaculating in his pants in front of [plaintiff][,]" the judge found defendant committed the predicate act of lewdness. Ibid.

Having found defendant committed predicate acts under SASPA, the judge analyzed "the possibility of future risk to the safety or well-being of the alleged victim." N.J.S.A. 2C:14-16(a)(2). The judge concluded defendant's violation of the TPO in returning to the church, despite the court's denial of defendant's request to lift the restriction, supported the need for continuing plaintiff's protection. The judge also considered the history of the abuse that defendant inflicted on plaintiff, finding the abuse had been ongoing for many years and "escalat[ed] over a period of almost a decade."

In accordance with his written opinion, the judge entered an FPO prohibiting defendant from contacting plaintiff, plaintiff's family, and plaintiff's friend. In addition, the FPO barred defendant from the existing church location and any future relocation of the church.

A-4774-17T3

On appeal, defendant raises the following arguments:

POINT I

THE COURT ERRED IN FINDING JURISDICTION UNDER SASPA WHEN THE PARTIES CLEARLY HAD A DATING RELATIONSHIP.

POINT II

DEFENDANT NEVER COMMITTED THE PREDICATE ACT OF LEWDNESS ON AUGUST 19, 2016 BECAUSE HE NEVER EXPOSED HIS INTIMATE PARTS.

POINT III

THE COURT BELOW ERRED IN FINDING THE POSSIBILITY OR RISK OF FUTURE HARM TO THE VICTIM.

POINT IV

THE RESTRAINTS IMPOSED ARE IMPERMISSIBLY BROAD.

We defer to the trial court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . ." Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 351, 357 (App. Div. 1963)). Our review of the record establishes that the judge's findings of fact were fully supported by the record and are entitled to our deference. Cesare v.

A-4774-17T3

Cesare, 154 N.J. 394, 411-12 (1998). Our deference to the judge's findings is particularly necessary when "the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We rely "on the trial court's acceptance of the credibility of . . . testimony and the court's fact-findings based thereon, noting that the trial court is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded [to his or] her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999).

Defendant contends plaintiff's testimony that they were not in a dating relationship is not credible. He further argues that because they had a dating relationship, the court lacked jurisdiction under SASPA. Whether plaintiff and defendant were in a dating relationship turned on the credibility of the witnesses' testimony and the evidence presented. After observing the witnesses and hearing their testimony over the course of five trial dates, the judge found defendant's testimony that he had a dating relationship with plaintiff was not credible.

Contrary to defendant's argument, the judge considered the factors in Andrews v. Rutherford, 363 N.J. Super. 252, 259-60 (Ch. Div. 2003), to determine whether the parties had a dating relationship. If the parties had a dating relationship, the judge concluded defendant would not have texted plaintiff exclaiming, "I wish u would want

8

me as much as [I] do want you . . . . I regret not being [twenty-eight] [thirty] years old. You would be my girlfriend, fiancée, wife." Nor would defendant have asked plaintiff "[w]hy can't I have you?" during the incident in the church office. The judge properly rejected "slavish adherence to any formula that does not consider the parties' own understanding of their relationship[,]" J.S. v. J.F., 410 N.J. Super. 611, 616 (App. Div. 2009), in concluding plaintiff and defendant lacked a dating relationship. While defendant desired such a relationship, plaintiff had no romantic interest in defendant. Based on the judge's credibility determinations and consideration of defendant's text message to plaintiff after the incident in the church office, we are satisfied the record supports the court's finding that no dating relationship existed between the parties.

We next consider defendant's argument that the judge erred in finding he committed the predicate act of lewdness. Pursuant to SASPA, lewdness "means the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or any other person." N.J.S.A. 2C:14-14(a)(1).

The judge did not find defendant exposed his genitals during the incident in the church office. Nor did plaintiff claim defendant exposed his genitals. Thus, the evidence did not permit a finding that defendant committed an act of lewdness. However, SASPA requires a finding of any one of the three predicate acts, nonconsensual sexual contact, sexual penetration, or lewdness, for the issuance of an FPO. Ibid.

A-4774-17T3

Defendant does not challenge the judge's finding of nonconsensual sexual contact. Because there was at least one predicate act – nonconsensual sexual contact – between defendant and plaintiff, the judge's erroneous finding of lewdness was harmless error, see R. 2:10-2, and does not void the FPO.

We turn to defendant's argument that the judge erred in finding the possibility of risk of future harm to plaintiff in the absence of an FPO. Having reviewed the record, we are satisfied that the judge properly assessed the credible evidence regarding defendant's prior conduct. The judge considered defendant's admitted violation of the TPO by returning to the church location despite the court's denial of his request to lift that restriction, as well as defendant's escalation of inappropriate conduct toward plaintiff over the course of many years, warranted the entry of the FPO to prevent a future risk to plaintiff's safety and well-being.

We next consider defendant's argument that the imposed restraints are impermissibly broad. Under SASPA, a FPO may include "requiring the respondent to stay away from any specified place that is named in the order and is frequented regularly by the victim or the victim's family or household members[.]" N.J.S.A. 2C:14-16(f)(1).

Here, the incident in August 2016 occurred in the church office. Many of the incidents described by plaintiff in her TPO complaint and trial testimony occurred in the church or during church functions. Thus, the judge properly barred defendant from the

present church location or any future church location so that plaintiff and her family could return to the church without fear of further contact with defendant.

Defendant argues plaintiff has not returned to the church since the incident and has not indicated a present or future intent to return to the church. However, plaintiff testified she temporarily transferred to another church while this case is pending and intends to return to the church upon final disposition of the matter.[3]

Defendant's rights are not unduly impacted by the restrictions in the FPO. Defendant remains able to pray and exercise his religious beliefs. However, defendant is properly precluded from attending the church where plaintiff and her family were congregants for the past eleven years and where they intend to return upon the conclusion of this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Defendant may "file a petition with the court to . . . modify [the] final protective order," N.J.S.A. 2C:14-16(i). In reviewing an application for modification of an FPO, "the court shall conduct a hearing to consider whether a material change in circumstances has occurred since the issuance of the protective order which would make its continued enforcement inequitable, oppressive or unjust . . . ." Ibid. We offer no opinion as to whether defendant might be entitled to such relief. Such a determination is dependent on the evidence produced in connection with an application made pursuant to the statute.

A-4774-17T3